No. 12401

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

STATE OF MONTANA ex rel. FIRST NATIONAL
BANK AND TRUST COMPANY OF HELENA,

Relator,

-vs-

THE DISTRICT COURT OF THE FIRST JUDICIAL
DISTRICT OF THE STATE OF MONTANA, IN AND
FOR THE COUNTY OF LEWIS AND CLARK AND THE
HONORABLE GORDON R. BENNETT, PRESIDING JUDGE
THEREOF,

Respondents.

ORIGINAL PROCEEDING:

Counsel of Record:

For Relator:

Small, Cummins and Hatch, Helena, Montana.
Robert Cummins argued, Helena, Montana.
Patrick F. Hooks argued, Townsend, Montana.

For Respondents:

Arthur P. Acher and Robert F. Swanberg, Helena,
Montana.
Robert F. Swanberg argued, Helena, Montana.

Submitted: November 28, 1972

Decided: JAN 9 - 1973

Filed: JAN 9 - 1973

Thomas J. Kearney
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Relator seeks through this original proceeding a writ of supervisory control to require the respondent court to vacate its order denying summary judgment on its behalf.

Relator is one of the defendants named in cause No. 35473, filed on December 10, 1971, in the district court of Lewis & Clark County, entitled John W. Foster, Plaintiff, vs. First National Bank & Trust Co. of Helena, et al., Defendants, wherein plaintiff seeks damages for personal injuries suffered during the course of his employment in the construction of drive-in parking facilities for the Bank in Helena.

Relator Bank contracted with American Building Company, the general contractor, to construct some drive-in banking facilities. In the construction contract, the Bank required American to carry workmen's compensation insurance protecting American from injury claims of its own employees, or the employees of any subcontractors. American then subcontracted with Allen Electric Company to perform part of the work, American in turn requiring Allen to carry workmen's compensation on Allen's employees. Plaintiff was an employee of Allen.

The accident took place on February 5, 1971. Plaintiff was working on a ladder when a car driven by Hazel Anderson, the other defendant, ran into the ladder and knocked plaintiff to the ground, causing certain alleged injuries. Hazel Anderson was a bank customer utilizing the drive-in banking facilities which the Bank had required to remain in operation throughout the construction.

Plaintiff has received workmen's compensation benefits for the injuries resulting from this accident and now brings this common law action for damages against the Bank, American, and Hazel Anderson, alleging negligence. In particular, the complaint alleges the Bank to have been negligent in that "the attendant provided by said bank negligently failed and omitted to direct traffic entering said drive-in facility, and particularly the defendant Hazel Anderson, so as to protect plaintiff engaged in work on said

- 2 -

driveway."

To put the case in proper perspective, we review the central theory behind the Workmen's Compensation Act. In Yurkovich v. Indus. Acc. Bd., 132 Mont. 77, 314 P.2d 866, cited in Buerkle v. Montana Power Co., 157 Mont. 57, 61, 482 P.2d 564, we said:

> "' * * * This act is fundamental legislation enacted first for the protection and benefit of the injured workman, his wife and children, and other dependents. By force of the law the employee surrenders his right of an action in tort for injury or death. The act however assures him and his dependents of the protection of certain benefits in case of injury or death.
>
> "'Secondly, the act fixes a limited liability of the employer so that the economic loss caused by such accidents shall not rest upon the employee or the public, but that the industry in which the accident occurs shall pay in the first instance for the loss occasioned by such accident.
>
> "'In construing a statute the whole act must be read together, and where there are several provisions or particulars such a construction is, if possible, to be adopted as will give effect to all.'"

Of particular importance is the quid pro quo concept that in return for workmen's compensation benefits the employer receives immunity from common law negligence actions such as that brought by the plaintiff in the instant case. According to this principle the concept is that although such compensation benefits are the sole remedy against the employer, yet the injured employee is nevertheless permitted to bring a common law negligence action against "third parties"--i.e. parties other than his employer.

Both of these concepts are embodied in section 92-204, R.C.M. 1947, which states:

> "Where both the employer and employee have elected to come under this act, the provisions of this act shall be exclusive, and such election shall be held to be a surrender by such employer and the servants, and employees of such employer and such employee, as among themselves, of their right to any other method, form or kind of compensation, or determination thereof, or to any other compensation, or kind of determination thereof, or cause of action, action at law, suit in equity, or statutory or common-law right or remedy, or proceeding whatever, for or on account of any personal injury to or death of such employee, except as such rights may be hereinafter specifically granted * * *. Provided, that whenever such employee shall receive an injury while

performing the duties of his employment and such injury
or injuries, so received by such employee, are caused
by the act or omission of some persons or corporations
other than his employer, or the servants or employees
of his employer, then such employee, or in case of his
death his heirs or personal representatives, shall,
in addition to the right to receive compensation under
the Workmen's Comepnsation Act, have a right to prose-
cute any cause of action he may have for damages against
such persons or corporations, causing such injury * * *."

Both the Bank and American moved for summary judgment in their be-half.  The motion was granted in favor of American, but denied as to the Bank.  The Bank now seeks through this writ to review and reverse this denial of summary judgment to the Bank.  The principal question presented is whether the Bank is a "person or corporation other than his employer"--i.e. a "third party".  If so, then the Bank is immune from a common law negligence action.

The word "employer" is defined in the act as anyone " * * * who has any person in service, in hazardous employment, under any appointment or contract of hire, expressed or implied, oral or written, and the legal representative of any deceased employer or the receiver or trustee thereof." Section 92-410, R.C.M. 1947.

Plaintiff claims that the Bank cannot be considered to be the "employer" of plaintiff, since there was no direct contract between the two. See Sullivan v. City of Butte, 117 Mont. 215, 157 P.2d 479.  However, the employer's liability for compensation and corresponding immunity from third party suits does not depend solely on the above definition of "employer"; it also encompasses the concept of "statutory employer" so that if a person is deemed to be a "statutory employer" he is liable for compensation and thus immune from third party suits.

We note that the employees of a subcontractor seldom have a direct contractual relationship with the general contractor or owner, and for this reason cannot be considered actual employees of the latter.  However, most states impose a special compensation liability upon an employer who con-tracts out if the subcontractor fails to insure compensation of his own employees.  For a discussion of this see Larson on Workmen's Compensation, Vol. 1A, § 49, p. 853.  Thus in Montana we have section 92-604, R.C.M.

1947, which provides:

> "Where any employer procures any work to be done, wholly or in part for him, by a contractor other than an independent contractor, and the work so procured to be done is a part or process in the trade or business of such employer, then such employer shall be liable to pay all compensation under this act to the same extent as if the work were done without the intervention of such contractor. And the work so procured to be done shall not be construed to be 'casual employment'".

The effect of this statute is to make the owner a "statutory employer" of the employees of contractors other than independent contractors so that the owner is liable for their workmen's compensation coverage.

The act then defines "independent contractor" in section 92-438, R.C.M. 1947, which provides:

> "'An independent contractor' is one who renders service in the course of an occupation, representing the will of his employer only as the result of his work, and not as to the means by which it is accomplished. But the legal defense of independent contractor shall not bar otherwise compensable industrial accident claims against employers except when such defense is interposed on behalf of a party who has previously required the claimant's immediate employer to come within the Workmen's Compensation Act."

This statute makes the owner the 'statutory employer' of employees of an independent contractor and permits him the use of the independent contractor defense if he requires the independent contractor to carry workmen's compensation on his own employees. The purpose of these two statutes is clearly to guarantee that all employees will be protected under the act, and that no employer or general contractor will escape liability for compensation by contracting out, except when he requires the independent contractor to carry the compensation insurance.

How does all this affect the owner's liability to a third party suit? Clearly when the owner is the claimant's employer, the owner is entitled to the quid pro quo immunity from such third party suits. We also hold that where the owner requires the independent contractor to provide workmen's compensation coverage against claims of employees of a subcontractor, the owner is immune from third party claims of such employees of the subcontractor.

The intent of the statute is to guarantee the protection of all employees working on the job by encouraging the owner to require the immediate employer to carry workmen's compensation on his own employees. The intent of such statute would be self-defeating if the owner who required this was entitled to no immunity from common law actions. Thus we held in Ashcraft v. Montana Power, 156 Mont. 368, 480 P.2d 812, that when the owner by requiring the independent contractor to carry workmen's compensation is entitled to the independent contractor defense, he is also entitled to immunity from third party suits under section 92-204, R.C.M. 1947. See also Buerkle v. Montana Power Co., 157 Mont. 57, 482 P.2d 564; Kelleher v. State, ___Mont.___, 503 P.2d 29, 29 St.Rep. 897; Larson v. Watters Const. Co., ___Mont.___, ___P.2d___, 29 St. Rep. 1068; Larson on Workmen's Compensation, Vol. 2, § 72.31.

Directing our attention to the instant case, we find the following paragraph in the Bank's contract with American:

"10. WORKMEN'S COMPENSATION INSURANCE:

"The contractor (American) shall maintain statutory Workmen's Compensation Insurance in the state of Montana during the life of this contract. Such Workmen's Compensation Insurance shall protect the contractor from claims made by his own employees, the employees of any subcontractor and also claims made by anyone directly or indirectly employed by the contractor or subcontractor. In case any work is sublet, the contractor may require each subcontractor similarly to provide Workmen's Compensation Insurance. In the event any class of employees engaged in work under this contract is not protected under the provisions of the Workmen's Compensation Act, the contractor and sub-contractors shall provide Employer's Liability Insurance with respect to such employees.

"The Contractor shall maintain insurance required under any other employee benefit acts in force at the place of building."

Another provision of the same contract stated:

"5.1.3 Nothing contained in the Contract Documents shall create any contractual relation between the Owner or the Architect and any Subcontractor or Sub-subcontractor."

Thus there was no contractual relation between the Bank and Allen, plaintiff's immediate employer. In fact, the Allen contract with American

- 6 -

was entered into 19 days after the principal contract between the Bank and American.

American, by requiring Allen to carry Workmen's Compensation on its own employees, clearly is protected from third party suits by the Ashcraft rule. The question remains whether the Bank is entitled to the same immunity in the absence of a direct contractual requirement that the plaintiff's immediate employer carry workmen's compensation. We hold that it is.

The reason for such a holding is simple. Although there is no contractual relation between the Bank and Allen or the plaintiff, yet, in paragraph 10 of its contract with American, the Bank guaranteed that all workers involved on the construction would be covered by workmen's compensation.

We can reach this decision in two ways. First, in the absence of workmen's compensation coverage by either Allen or American, clearly under the statute the Bank would not be entitled to the independent contractor defense, and would thus be deemed the plaintiff's "statutory employer". Second, the Bank complied with the intent of the statute that all persons working on the construction would be covered by workmen's compensation. Accordingly, the Bank is entitled to its quid pro quo--immunity from third party negligence actions

Additionally respondent contends that the filing of the petition for supervisory control here was not timely. We do not consider a delay of three months in this multiple party litigation involving conflicting interests with different ideas as how to best proceed to be fatal to the relief asked.

The order of the district court denying summary judgment is vacated and the district court is directed to grant summary judgment to the First National Bank.

_____
Associate Justice

- 7 -

We concur:

_James T. Harrison_
Chief Justice

_Gene B. Daly_

_Wesley Castles_

_John Conway Harrison_
Associate Justice

- 8 -