No. 87-344

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

ROCKY L. WEBB,

        Plaintiff,

-vs-

MONTANA MASONRY CONSTRUCTION COMPANY,
a Montana corporation, and ALDINGER
CONSTRUCTION COMPANY, INC., a Montana
corporation,

        Defendants.

ORIGINAL PROCEEDING:

COUNSEL OF RECORD:

        For Plaintiff:

                Jarussi & Bishop; Gene R. Jarussi argued, Billings,
                Montana

        For Defendants:

                Jardine, Stephenson, Blewett & Weaver; Steven Potts
                argued, Great Falls, Montana

Submitted: March 31, 1988

Decided: August 11, 1988

Filed: AUG 1 1 1988

*Ethel M. Harrison*

Clerk

Honorable Gordon R. Bennett, District Judge, delivered the Opinion of the Court.

Honorable Paul G. Hatfield, United States District Judge for the District of Montana, has certified to this Court under Rule 44 of the Montana Rules of Appellate Procedure the following question:

> Where a general contractor is compelled, pursuant to Section 39-71-405(1), Montana Code Annotated, to pay workers' compensation benefits to an employee of an uninsured subcontractor, is that general contractor's liability limited, by Section 39-71-411, Montana Code Annotated, to compensation under the Workers' Compensation Act?

The statutes referred to provide:

> 39-71-405. Liability of employer who contracts work out. (1) An employer who contracts with an independent contractor to have work performed of a kind which is a regular or a recurrent part of the work of the trade, business, occupation, or profession of such employer is liable for the payment of benefits under this chapter to the employees of the contractor if the contractor has not properly complied with the coverage requirements of the Workers' Compensation Act. Any insurer who becomes liable for payment of benefits may recover the amount of benefits paid and to be paid and necessary expenses from the contractor primarily liable therein.

> 39-71-411. Provisions of chapter exclusive remedy--nonliability of insured employer. For all employments covered under the Workers' Compensation Act or for which an election has been made for coverage under this chapter, the provisions of this chapter are exclusive. Except as provided in part 5 of this chapter for uninsured employers and except as otherwise provided in the

Workers' Compensation Act, an employer is not subject to any liability whatever for the death of or personal injury to an employee covered by the Workers' Compensation Act or for any claims for contribution or indemnity asserted by a third person from whom damages are sought on account of such injuries or death. The Workers' Compensation Act binds the employee himself, and in case of death binds his personal representative and all persons having any right or claim to compensation for his injury or death, as well as the employer and the servants and employees of such employer and those conducting his business during liquidation, bankruptcy, or insolvency.

The following facts are stipulated:

1. In 1985, Aldinger Construction, Inc. (hereinafter referred to as "Aldinger"), was the general contractor hired by the Bainville School District to remove an existing building and construct a new school building. Montana Masonry Construction Company (hereinafter referred to as "Montana Masonry") was a subcontractor on the project. Rocky L. Webb (hereinafter referred to as "Webb") was an employee of Montana Masonry.

2. On or about September 11, 1985, Webb was injured in an accident which arose out of and in the course of his employment with Montana Masonry.

3. By reason of the employer-employee relationship between Webb and Montana Masonry, Montana Masonry was required by Montana law to provide workers' compensation insurance coverage for Webb. Montana Masonry failed to provide said coverage for the accident which occurred on or about September 11, 1985.

4. On the date of the accident, Aldinger did carry workers' compensation

3

coverage through the State Compensation Insurance Fund.

5. Since Montana Masonry had not properly complied with the coverage requirements of the Workers' Compensation Act, the State Compensation Insurance Fund became liable for payment of benefits by reason of the provisions of § 39-71-405(1), MCA.

6. On or about December 22, 1986, Webb initiated the present action. Webb is seeking compensation for his injuries from Montana Masonry and Aldinger on the grounds that they failed to comply with the requirements of the Montana Scaffold Act and also failed to provide a safe place to work as provided by § 50-71-201 et seq., MCA.

7. As of the date of the Joint Motion, Montana Masonry has not been served with the lawsuit. However, Aldinger has been served and has filed an Answer denying liability. In addition, Aldinger has asserted in its Third Affirmative Defense that since it was required to and did pay compensation and medical benefits to Webb, an employee of Montana Masonry, pursuant to the provisions of the Workers' Compensation Act, Aldinger is entitled to the insulation provided employers under the Workers' Compensation Act, including those provisions of § 39-71-411, MCA.

Section 39-71-412, MCA, provides in pertinent part:

The right to compensation . . . is not affected by the fact that the injury . . . is caused by the negligence of a third party other than the employer. . . . Whenever such event . . . is caused by the act or omission of some persons or corporations other than his employer . . ., the employee, . . . in addition to the right to receive compensation under this chapter, [has] a right

4

> to prosecute any cause of action he may
> have for damages against such persons or
> corporations.

The question here is whether Webb may maintain an action for negligence against Aldinger under the above statute and circumstances. We hold that he can, and that the answer to the question certified is, therefore, "no."

The question upon which this answer turns is whether Aldinger becomes clothed with immunity under § 39-71-411, MCA, by becoming liable under § 39-71-405(1), MCA, due to the failure of Montana Masonry to provide coverage under the Workers' Compensation Act. The question is not without difficulty or a considerable history.

The Act, originally passed in 1909 (Chapter 67, Laws of 1909), was found unconstitutional because it did not protect an employer who furnished compensation under it from being sued by the injured worker. Because no provision was made for reimbursement, in whole or in part, the Court found that the employer against whom an action was successfully prosecuted would be compelled to pay twice. The Court saw this as a violation of the employer's right to equal protection of the laws. See, Cunningham v. Northwestern Improvement Co. (1911), 44 Mont. 180, 119 P. 554. The legislature tried again in 1915, providing specifically for immunity for any employer who elected to pay compensation under the Act (Section 3, Chapter 96, Laws of 1915). The new Act passed constitutional muster in Shea v. North-Butte Mining Co. (1919), 55 Mont. 523, 179 P. 499, wherein it was held the Act did not offend the Constitution by closing the courts to injured workmen who had chosen to become subject to the Act. Shea, 55 Mont. at 533-534, 179 P. at 503.

The question of an owner's or general contractor's reciprocal immunity arising from liability for a noncomplying

5

subcontractor did not arise until after the 1965 legislature amended the definition of an independent contractor by adding:

> But the legal defense of independent contractor shall not bar otherwise compensable industrial accident claims against employers except when such defense is interposed on behalf of a party who has previously required the claimant's immediate employer to come within the workman's compensation act.

Chapter 49, Laws of 1965, amending § 92-438, R.C.M. 1947.

In Ashcraft v. Montana Power Co. (1971), 156 Mont. 368, 480 P.2d 812, this Court extended the legal defense to an industrial accident claim provided for in the amendment to § 92-438, R.C.M. 1947, to immunity from any liability on the part of any employer who required a subcontractor to comply with the Act. The decision turned on a phrase borrowed from Wells v. Thill (1969), 153 Mont. 28, 32-33, 452 P.2d 1015, 1017, which was in turn borrowed from a Wisconsin independent contractor case: "In every such instance where the contractor is in full supervision and control of the work, he alone becomes liable to his employees under the statute for injuries sustained."[1] The Court, concluding that this sentence

---

[1]    The question in the case cited (Potter v. City of Kenosha (Wisc. 1955), 68 N.W.2d 4) was whether the city, as owner of the streets, was liable under Wisconsin's "safe place statute" for the injury of an independent contractor's employee because it permitted the contractor to work in a trench in the street without shoring it was required by the safety code. The court concluded the contractor was liable because he was independent and that the city was not liable because it had contracted for a sewer, not a trench, and therefore had no control over the trench. The case had nothing to do with workmen's compensation, as such.

made the immunity of the employer of an independent contractor "axiomatic" under § 92-438, R.C.M. 1947, stated that its holding was "strictly limited to circumstances in which the injured employee's immediate employer is an independent contractor who is required to carry workmen's compensation insurance by his general employer." Ashcraft, 156 Mont. at 370, 480 P.2d at 813.

The term "statutory employer" was not mentioned in the Ashcraft majority opinion. But Justice Daly, dissenting, asserted the majority had created a statutory employer on the authority of Professor Arthur Larson's Workmen's Compensation Law, Vol. 2A, § 72.31. Subsection 72-31(a) of that work states:

> When subcontractor is not insured.
>
> Forty-four states now have "statutory-employer" or "contractor-under" statutes --i.e., statutes which provide that the general contractor shall be liable for compensation to the employee of a sub-contractor under him, usually when the subcontractor is uninsured but sometimes without reference to the insured status of the subcontractor, doing work which is part of the business, trade or occu-pation of the principal contractor. Since the general contractor is thereby, in effect, made the employer for the purposes of the compensation statute, it is obvious that he should enjoy the regular immunity of an employer from third-party suit when the facts are such that he could be made liable for compen-sation; and the great majority of cases have so held. This result is not af-fected by the fact that no compensation claim has been brought against the

general contractor by the employee, or that compensation benefits were voluntarily paid by the general contractor. [Citations omitted.]

In Buerkle v. Montana Power Company (1971), 157 Mont. 57, 59, 482 P.2d 564, 568, a case characterized by the Court as a "sequel" to Ashcraft, the plaintiff urged that the exception in § 92-438, R.C.M. 1947, should be limited in effect to the Workmen's Compensation Act and should not be a bar to third party liability suits grounded on the common law. In concluding otherwise, this Court observed: "The system of compensation under the Workmen's Compensation Act does not envision benefits drawn from a single employer by a common law tort action together with liability from workmen's compensation insurance." In so holding, the Court cited the passage from Larson set forth above. Buerkle, 157 Mont. at 62, 482 P.2d at 566-567. It could be fairly said that the Buerkle case set this state firmly in the "statutory employer" column, granting immunity from common law tort action to all employers who were liable under the Workmen's Compensation Act.

This quid pro quo concept was affirmed in First National Bank v. District Court (1973), 161 Mont. 127, 505 P.2d 408, a case in which immunity was clearly and specifically extended, under § 92-438, R.C.M. 1947, to owners who required their independent contractors to provide workmen's compensation coverage against claims of employees of their subcontractors. 161 Mont. at 133, 505 P.2d at 411. But the immunity did not stop there. The Court went on to accord the statutory employer immunity to the owner, even though it did not contractually require the injured employee's immediate employer to carry workmen's compensation, thus at least eroding one of the two requirements for application of the

8

rule laid down in Ashcraft--i.e., that the employer require the independent contractor to be covered.

The accident in First National Bank, supra, occurred February 5, 1971, the case was submitted to this Court November 28, 1972, and decided January 9, 1973. On March 22, 1972, the 1972 Montana Constitutional Convention adopted the declaration of rights article (II) of our present Constitution, to be effective, prospectively, on July 1, 1973. Mont. Const. Conv., Vol. II, pp. 1104 and 1108. The Constitution was approved by the electorate on June 6, 1972. Section 16 of Article II of the Constitution provides:

> Section 16. The administration of justice. Courts of justice shall be open to every person, and speedy remedy afforded for every injury of person, property, or character. No person shall be deprived of this full legal redress for injury incurred in employment for which another person may be liable except as to fellow employees and his immediate employer who hired him if such immediate employer provides coverage under the Workmen's Compensation Laws of this state. Rights and justice shall be administered without sale, denial, or delay.

The president of the convention was Leo Graybill, Jr., of the law firm which represented the claimant in Wells v. Thill, supra, upon which, as noted, Ashcraft was based, and the Chairman of the Bill of Rights Committee, which formulated the Declaration of Rights article, was Wade J. Dahood of the law firm which represented the claimant in Ashcraft, supra.

The second sentence of Section 16 speaks loudly and clearly for itself. If there could be any question about what the members intended the sentence to mean, the question can be answered by reference to the transcript of the convention. Delegate Marshall Murray, a Kalispell attorney, moved,

on behalf of a unanimous Bill of Rights Committee, for the adoption of Section 16, which amended the 1889 Constitution by adding the workmen's compensation provision of the second sentence. In so doing, Delegate Murray announced:

> . . . The committee felt, in light of a recent interpretation of the Workmen's Compensation law, that this remedy needed to be explicitly guaranteed to persons who may be employed by one covered by Workmen's Compensation to work on the facilities of another. Under Montana law, as announced in the recent decision of Ashcraft versus Montana Power Company, the employee has no redress against third parties for injuries caused by them if his immediate employer is covered under the Workmen's Compensation law. The committee feels that this violates the spirit of the guarantee of a speedy remedy for all injuries of person, property or character. It is this specific denial, and this one only, that the committee intends to alter with the following additional wording: "No person shall be deprived of his full legal redress for injury incurred in employment for which another person may be liable except as to fellow employees and his immediate employer who hired him if such immediate employer provides coverage under the Workmen's Compensation laws of this state." In other words, the committee wants to insure that the Workmen's Compensation laws of the state will be used for their original purpose--to provide compensation to injured workmen--rather than to deprive an injured worker of redress against negligent third parties, beyond his employer and fellow employees, because his immediate employer is covered by Workmen's Compensation. The committee believes that clarifying this remedy would have a salutary effect on the conscientiousness of persons who may contract out work to be done on their premises. To permit no

10

remedy against third parties in cases where the employer is covered by Workmen's Compensation is to encourage persons with rundown premises to contract out work without improving the quality of the premises. The committee urges that this is an abuse of the Workmen's Compensation law and constitutes a misapplication of that law to protect persons who are negligent. The committee commends this provision to the Convention with the belief that it is an important, if technical, aspect of the administration of justice. Those are the remarks which are contained in the booklet. Let me amplify them by saying basically this: we felt that the right to third party action is a right which we should establish in our Constitution. It is a right which working men and women who are unfortunate enough to be injured have had for nearly 80 years in this state. We feel that it was wrongly taken away from these people by the Supreme Court decision which was mentioned. We feel that we perhaps are legislating in asking that this be written into our Constitution, but we of the committee really believe that we are acting in a judicial manner in asking that it be written in the Constitution for we feel that this Convention, perhaps, is the court of last resort for injured working men and women in Montana with respect to the third party lawsuit, and we recommend that the section be adopted.

Mont. Const. Conv., Vol. V, pp. 1753-1754.

Delegate Otto Habedank, a Sidney attorney, moved for deletion of the provision and argued against it on the ground the same result could be obtained by legislation. The motion failed on a vote of 76 to 14, and the section was approved without a dissenting vote. Mont. Const. Conv., Vol. V, pp. 1754-1760. On this record, it must be concluded without

11

equivocation that our 1972 Constitutional Convention determined that Professor Larson's grant of immunity to statutory employers was to be excised from Montana law, root and branch, forever.

The legislative session immediately following the Constitutional Convention responded to the command of Article II, Section 16, of the new Constitution by reworking the Workers' Compensation Act. It repealed in its entirety § 92-438, R.C.M. 1947, the section around which this Court had structured its statutory employer immunity principle. See, Section 2, Chapter 251, Laws of 1973. It also enacted a new paragraph which has become § 39-71-405(1), MCA (see current text above), which provided:

> Any employer who contracts to have work performed of a kind which is a regular or a recurrent part of the work of the trade, business, occupation or profession of such employer shall be liable for the payment of compensation to the employees of any subcontractor unless the subcontractor _primarily liable_ for the payment of such compensation has coverage under this act. _Any employers who shall become liable for such compensation may recover the amount of benefits paid and necessary expenses from the subcontractor primarily liable therein._ [Emphasis added.]

Section 1, Chapter 154, Laws of 1973 (second paragraph).

It is of particular interest to note that the legislature used, for the first time, the term "primarily liable"; that the "primarily liable" subcontractor was ultimately responsible for payment of benefits; and that an employer paying benefits on behalf of a noncovered subcontractor was entitled to look to the subcontractor for indemnification. In this way, it would seem, the legislature intended to avoid the double payment problems first encountered in Cunningham,

12

supra, and to provide the employer with a means of avoiding loss because of a noncomplying contractor, but not to immunize a negligent employer from a third party action. The language of this subsection was altered by the 1979 legislature to accommodate specific reference to independent contractors, and to make it clear insurers, including, we suppose, self-insured employers, were entitled to recover benefits paid on behalf of primarily liable contractors, leaving unaltered the basic thrust of the section: the liability for payment of benefits stayed with the immediate employer, as did the immunity.

Clayton R. Fiscus was injured May 27, 1971, while working for a subcontractor of Beartooth Electric Co-operative, which had not required the subcontractor to carry workmen's compensation. The proceedings, in Fiscus v. Beartooth Electric (1974), 164 Mont. 319, 522 P.2d 87, were therefore not affected by the 1972 Constitution or the 1973 enactments pursuant thereto, even though the case was submitted and decided after the effective date of both. See, Poulson v. Walsh-Groves (1975), 166 Mont. 163, 531 P.2d 1335. Characterizing it as a "step-out" from Ashcraft and Buerkle, this Court held the employer enjoyed immunity even though it had not required the subcontractor to carry workmen's compensation insurance and even though the subcontractor had not only had insurance but had paid the claimant from it. The latter feature was the new one in the case because the Court had already decided in the First National Bank extension of the Ashcraft case that the employer enjoyed immunity even though it had not contractually required its subcontractor to insure. As to this new feature, it was concluded that immunity was justified in the case where the owner or employer did not require the subcontractor to be insured because the owner or contractor was subject to liability as the statutory

13

employer in the event the subcontractor did not maintain workers' compensation coverage. The fact that the subcontractor had, in the _Fiscus_ case, actually maintained the coverage, even though not required to do so by the owner, was of no moment because the _potential_ for liability on the part of the owner was present. _Fiscus_, 164 Mont. at 326, 522 P.2d at 90. This Court unanimously overruled the _Fiscus_ "step out" in Piper v. Lockwood Water Users Assn. (1978), 175 Mont. 242, 573 P.2d 646.

With this history in mind, we consider the arguments presented.

Aldinger's initial and central argument is that it is entitled to immunity as Webb's statutory employer. Its principal reliance is on the 1972 case of Kelleher v. State (1972), 160 Mont. 365, 503 P.2d 29, in which Justice Daly, writing for the majority, adopted Professor Larson's statutory employer concept and concluded: ". . . the rationale of the statutory employer-employee extension by the legislature is for the benefit of the employee and that such a benefit conferring a liability on the employer is co-existent with immunity from common law liability." 160 Mont. at 369-370, 503 P.2d at 31. _Kelleher_, of course, followed _Ashcraft_ in both time and legal principle. Reliance on it in this case is defective for at least three reasons, as heretofore noted. First, the statute upon which the statutory employer concept was enacted for Montana (§ 92-438, R.C.M. 1947) has been repealed. Second, the _Ashcraft_ holding was expressly and specifically overruled by the people of the state with their approval of Article II, Section 16, of the 1972 Constitution, in which they directed that immunity would be restricted to an "immediate employer who hired" the workmen and who had provided coverage. Third, the 1973 Montana legislature implemented the new constitutional provision by amending

14

§ 39-71-405, MCA, to provide that employers such as Aldinger who were required to pay, as self-insurers or through their insurance, compensation on behalf of a "primarily liable" contractor could recover the payment from such an employer. If the immediate or primary employer who hired the worker is ultimately responsible for payment of workmen's compensation, the whole quid pro quo rationale underlying the statutory employer concept disappears, which was clearly what the legislature intended.

Aldinger's other arguments are, for the most part, variations on the statutory employer theme. It contends the Workers' Compensation Act provides an exclusive remedy for the employee as well as the employer. That undoubtedly is what § 39-71-411, MCA, provides: it binds the employee to the extent the Act applies. The Act, however, also specifically preserves the employee's common law right to sue third parties, other than his employer or a fellow employee, for his injuries. Section 39-71-412, MCA. In this case, the question comes down again to whether Aldinger is an immunized employer, and we hold it is not.

The argument is made that granting immunity to Aldinger is in conformity with the first sentence of Article II, Section 16, of the 1972 Constitution, because its payment of workers' compensation to Webb provides him a "speedy remedy." This sort of sophistry is hardly worth consideration when one places the phrase back into its context. A "speedy remedy" is afforded by the Constitution to every person for every injury of person, property or character. The fact that workers' compensation must be paid in a relatively speedy manner, ultimately by the immediate employer, is no justification for cutting off legitimate third party remedies. Aldinger argues that preserving Webb's right to bring a third party suit against it gives Webb a double remedy. A passing

15

perusal of the subrogation statute, § 39-71-414, MCA, explodes this theory.

Aldinger summons Washington Metropolitan Area Transportation Authority v. Johnson (1984), 467 U.S. 925, 104 S.Ct. 2827, 81 L.Ed.2d 768, in aid of its cause. In this case, the United States Supreme Court concluded the Authority was entitled to immunity from tort actions brought by employees of its contractors because under the operative statute (Longshoremen's and Harbor Workers' Compensation Act, 33 USC 940(a)), the Authority was required to obtain workers' compensation coverage for all of the employees of its contractors which failed to obtain such coverage. The Authority was therefore found to be ultimately liable for the coverage of all employees of its contractors and subcontractors. As we have pointed out, that is not the case under the law in Montana, where the immediate employer is ultimately liable and where there is no requirement that the contractor carry compensation insurance if its subcontractor does not. The cases from other states relied upon by Aldinger are likewise readily distinguishable on the basis of differences in the statutes construed.

On the other hand, Loffon v. Bell and Zoller Coal Co. (Ill. 1977), 359 N.E.2d 125, deals with a statute which, like Montana's, permitted recovery by the paying contractor from the noncomplying subcontractor. The Court met the fundamental argument made here in the following discussion:

> The defendants argue that a construction of section 5(a) adverse to their position would result in a violation of their rights to due process and equal protection. They premise this contention on the basis that they are liable to pay compensation benefits without fault under section 1(a)(3) and still remain subject to a subsequent common law or statutory action for damages. We

16

find this argument to be without merit, for under this construction of section 5(a) defendants are placed in no worse position than they are in regard to suits by employees of insured subcontractors. The only difference between the two situations is that in one case the general contractor has paid compensation. He, however, has the right of indemnification against the uninsured subcontractor. If the subcontractor is insolvent, the general contractor who is found liable based upon a common law or statutory cause of action may set off from that award the amount of compensation benefits he has previously paid to the employee. The employee receives no windfall or double recovery. In some cases, where the subcontractor is insolvent and the general contractor prevails in the common law or statutory action, the general contractor must bear the burden of the compensation payments. It must be noted, however, that the general contractor had it within his power to protect himself from this loss by hiring insured subcontractors.

Loffon, 359 N.E.2d at 130.

The declaration made in the second sentence of Article II, Section 16, together with its legislative implementation in § 39-71-405, MCA, would seem to be so clear that it not only needs no interpretation, it prohibits it. If, however, some doubt may somehow be cast on the constitutional and legislative intent, any interpretation of that intent must be in favor of the claimant. It is stipulated the accident involved here occurred September 11, 1985. At that time, § 39-71-104, MCA, provided: "Whenever this chapter or any part or section thereof is interpreted by a court, it shall be liberally construed by such court." The decisions of this Court had long since established that this provision required liberal construction in favor of the claimant. See, e.g.,

17

Cordier v. Stetson-Ross, Inc. (1979), 184 Mont. 502, 604 P.2d 86. While this section was repealed by the 1987 legislature (Section 68, Chapter 464, Laws of 1987), it was substantive in nature and must therefore be applied as it existed at the time the claimant's right accrued, i.e.: on the date of the accident.

Aldinger invites this Court to overrule its holdings in White v. State (1983), 203 Mont. 363, 661 P.2d 1272, and Pfost v. State (Mont. 1985), 713 P.2d 495, 42 St.Rep. 1957, to advance its theory that the first sentence of Article II, Section 16, of the 1972 Constitution ("Courts of justice shall be open to every person, and speedy remedy afforded for every injury of person, property, or character."), does not represent a fundamental right and should therefore somehow be less seriously regarded. It concedes, however, that the right expressed goes back to Magna Charta, and it would be difficult to argue that it does not express a common law right. Common law rights are extinguished only upon strict construction. Madison v. Pierce (1970), 156 Mont. 309, 478 P.2d 860. To deprive Webb of his right to bring an action against Aldinger on Professor Larson's equitable theory that anyone who pays or is subject to paying workers' compensation, whether the payment can be recovered or not, is entitled to immunity would be a most liberal construction of a clear and long established constitutional imperative.

If we by judicial fiat defy the clearly stated intention of both the 1972 Constitutional Convention and the 1973 legislature and once more raise the ghost of Ashcraft by immunizing owners and contractors from liability for their negligence because they had paid or are subject to paying compensation for their noncomplying contractors or subcontractors, we will be rewarding them for not requiring the immediate employers of injured working men to comply with the

18

spirit as well as the letter of the Act, and we will be ignoring the fact that they may recover the payments made from the offending employers, thus acquiring the immunity free. This would be a patent perversion of a law that was conceived, enacted and is supposed to be implemented primarily to provide aid and relief to injured working men and women.

For all of the above reasons, we hold the answer to the question certified must be "No," and the United States District Court is so advised.

Hon. Gordon Bennett, District
Judge, sitting in place of Mr.
Justice L. C. Gulbrandson

We concur:

Chief Justice

Justices

19

Mr. Justice Fred J. Weber specially concurs as follows:

In Ashcraft, the Court extended to Montana Power Company immunity from tort liability in the workers' compensation setting. The framers of the 1972 Constitution expressly overruled Ashcraft by providing immunity only to immediate employers who provide workers' compensation coverage. Unlike the majority, I do not believe that Article II, Section 16, contemplated Aldinger's position, which is distinguishable from Montana Power Company's position in Ashcraft.

In Ashcraft, the employee received workers' compensation from Swain & Morris, the subcontractor of Montana Power. Under the quid pro quo theory which underlies the workers' compensation law, Swain & Morris had immunity from tort liability as the employer which furnished workers compensation. Ashcraft held that Montana Power, the employer of Swain & Morris, also had immunity from tort liability. At that point Montana Power had furnished nothing in return for the freedom from tort liability.

In contrast, Montana Masonry, as Webb's immediate employer, failed to carry workers' compensation insurance. As a result of that failure, Aldinger, the employer which had hired Montana Masonry as a subcontractor, was required to furnish and did furnish workers' compensation coverage to Mr. Webb. Following the quid pro quo theory, Montana Masonry under our statutes will not be granted immunity from tort liability because of its failure to furnish workers' compensation coverage. Under the theory of the majority, Aldinger is also denied immunity from tort liability even though Aldinger actually furnished the workers' compensation coverage which protected and paid the employee.

The majority states that the 1973 Legislature implemented the new Constitution by enacting § 39-71-405(1), MCA,

to hold the subcontractor primarily liable. The majority does not mention that the 1973 enactment was amended in 1979. I do not conclude that a 1973 enactment to workers' compensation law which was subsequently amended is determinative.

I agree that the clear wording of Article II, Section 16 of the Montana Constitution, is determinative of the present case, because I find no legislative indication of an intent to grant immunity from tort liability to employers such as Aldinger. I find no statute which suggests that Aldinger should be considered as the equivalent of the "immediate employer who hired him" as provided in Article II, Section 16. Although I do not agree that the Constitution's framers had this situation in mind, in view of the clear wording of the constitutional provision, I have to agree that Aldinger's liability for workers' compensation to Mr. Webb has not given it immunity from tort liability. Contrary to the argument of the majority, I reach that conclusion because I can find nothing in the statutes to persuade me that the legislature has actually considered the problem of Aldinger.

The majority reaches the conclusion that to deprive Mr. Webb of his right to bring an action against Aldinger on Professor Larson's equitable theory--that anyone who pays or is subject to paying workers' compensation is entitled to immunity, whether the payment can be recovered or not--would be a most liberal construction of a constitutional imperative. I do not agree with that broad conclusion. It reminds me of the arguments made in Shea v. North-Butte Min. Co., (1919), 55 Mont. 522, 179 P. 499, when the worker questioned the constitutionality of the Workmen's Compensation Act. In that case the Court stated as follows with regard to the purpose of workmen's compensation:

21

> It is sufficient . . . to call to mind that the object sought was to substitute for the imperfect and economically wasteful common-law system by private action by the injured employe for damages for negligent fault . . . which, while attended with great delay and waste, compensated those employes only who were able to establish the proximate connection between the fault and the injury, a system by which every employe in a hazardous industry might receive compensation for any injury suffered by him . . . whether the employer should be at fault or not . . .

Shea, 179 P. at 501. In that case this Court concluded that there were appropriate benefits to both the employer and employee to uphold the Act as constitutional, applying a quid pro quo theory. Under that theory, it may be that the Montana Legislature could enact legislation granting an equivalent benefit to Aldinger as the employer which furnished compensation.

Without taking a position as to whether the legislature has the power to do so under the Constitution, I do invite the legislature to carefully consider this question. It certainly may be argued that as a matter of fairness, Aldinger is entitled to immunity from tort liability in exchange for providing workers' compensation. Consideration of that question will require careful analysis of the provisions of Article II, Section 16 of the Montana Constitution.

I concur in the result of the majority opinion.

Justice

22