For Appellant: Kurt M. Jackson (argued), Drew Blewett, Hoyt & Blewett, PLLC, Great Falls, Montana
For Appellee: Marshal L. Mickelson (argued), Corette Black Carlson & Mickelson, Butte, Montana
Jill Gerdrum (argued), Axilon Law Group, PLLC, Missoula, Montana, T. Thomas Singer, Walter D. Clapp, Axilon Law Group, PLLC, Billings, Montana (for Amicus Curiae Avitus Group)
Mark M. Kovacich (argued), Ross T. Johnson, Kovacich Snipes, P.C., Great Falls, Montana (for Amicus Curiae MTLA)
Robert K. Baldwin, Goetz, Baldwin & Geddes, P.C., Bozeman, Montana (for Amicus Curiae NAPEO)
Justice Ingrid Gustafson delivered the Opinion of the Court.
*315 ***299 ¶ 1 David Ramsbacher (Ramsbacher) appeals from an order of the Fourth Judicial District Court, Missoula County, granting summary judgment in favor of Jim Palmer Trucking (JPT). We affirm.
¶ 2 We restate the issue on appeal as follows:
Does § 39-8-207(8)(b)(i), MCA, which extends the exclusive remedy of the Workers' Compensation Act from a Professional Employer Organization to its client, violate Article II, Section 16, of the Montana Constitution by depriving an injured worker of full legal redress?
FACTUAL AND PROCEDURAL BACKGROUND
¶ 3 The controversy in this case arises from the interplay of Title 39, Ch. 8, MCA-known as the Montana Professional Employer Organizations and Groups Licensing Act (PEO Act)-and Article II, Section 16, of the Montana Constitution. Professional Employer Organizations (PEOs) hire employees and assign them to the PEO's client businesses on an ongoing basis. PEOs are statutorily required to assume responsibility for the payment of employee wages, workers'
***300 compensation premiums, payroll-related taxes, and employee benefits. Section 39-8-207(1)(b)(ii), MCA. However, Article II, Section 16, provides:
Courts of justice shall be open to every person, and speedy remedy afforded for every injury of person, property, or character. No person shall be deprived of this full legal redress for injury incurred in employment for which another person may be liable except as to fellow employees and his immediate employer who hired him if such immediate employer provides coverage under the Workmen's Compensation Laws of this state. Right and justice shall be administered without sale, denial, or delay.
¶ 4 Because Article II, Section 16, extends the exclusive remedy of the Workers' Compensation Act (WCA) only to the "immediate employer ... if such immediate employer provides coverage," the question arises here as to whether, when a business contracts with a PEO who pays the workers' compensation insurance premiums for certain employees, both the business and the PEO can be considered an "immediate employer" of those employees for the purpose of the exclusive remedy in accordance with § 39-8-207(8)(b)(i), MCA, or whether that provision conflicts with Article II, Section 16.
¶ 5 In August 2010, JPT entered into a contract with Payroll Plus Corporation (PPC), which is a licensed PEO. Pursuant to the requirements of the PEO Act, the parties' written contract governed the employment arrangement for certain job positions at JPT. Under the terms of the contract, JPT agreed not to hire employees directly. Instead, PPC hired the workers and "assigned" them to JPT. The contract designated PPC as the "administrative employer" of these employees. PPC agreed to assume responsibility for administrative duties, including payroll, payroll taxes, unemployment compensation, and workers' compensation.
¶ 6 The contract specified both PPC and JPT had some right of control over these employees. The contract stated, "PPC reserves a right of direction and control over Assigned Employees, as is necessary, to carry out its obligations as the administrative employer of such Assigned Employees, including the right to hire, terminate, discipline, and reassign Assigned Employees." Regarding JPT, the contract stated:
*316 Client Company shall, at all times, retain such direction and control over Assigned Employees as is necessary for Client Company to conduct Client Company's business and without which Client Company would be unable to conduct Client Company's business, discharge any fiduciary responsibility that ***301 it may have, or comply with any applicable licensure, regulatory, or statutory requirement for itself or its workers. Such authority maintained by Client Company shall include the right to accept or cancel the assignment of any Assigned Employee.
¶ 7 As per the contractual agreement, and in accordance with the PEO Act, PPC purchased and maintained workers' compensation insurance coverage for the employees it assigned to JPT. An appendix to the contract set forth a schedule which required JPT to pay PPC a percentage of each assigned employee's gross compensation to compensate PPC for providing workers' compensation coverage. The appendix further provided JPT would reimburse PPC for any issue fees for workers' compensation policies, and the rate schedule would be adjusted for any increases or decreases of costs not under PPC's control. The amounts were calculated based on JPT's insurance rates-not PPC's. Aside from the contractual arrangement with PPC, JPT did not purchase or maintain workers' compensation insurance for its assigned employees.
¶ 8 In September 2013, Ramsbacher applied to JPT for a truck-driving job. JPT found him qualified and referred him to PPC. PPC then hired Ramsbacher and assigned him to JPT. Ramsbacher's assignment to JPT was not a temporary placement, but was intended to be on an ongoing basis. JPT provided Ramsbacher with its employee handbook and alcohol and controlled substance policies, trained him, supplied him with tools and equipment, directed his day-to-day job activities, and was responsible for conducting his annual employment review. If JPT was dissatisfied with Ramsbacher's work, it could have refused his assignment from PPC, effectively terminating his employment at JPT.
¶ 9 On December 23, 2013, Ramsbacher suffered a significant on-the-job injury while trying to repair a JPT truck that had broken down while he was driving it. Ramsbacher reported his injury to PPC, and PPC's workers' compensation insurer paid Ramsbacher's benefits. Ramsbacher does not allege he has not received the benefits entitled to him under the WCA.
¶ 10 In April 2014, Ramsbacher filed this suit against JPT, alleging his injuries occurred because of JPT's failure to provide a safe workplace in accordance with § 50-71-201, MCA. JPT responded that Ramsbacher's claim was barred by the exclusivity provision of the WCA.
¶ 11 Ramsbacher then moved for summary judgment, arguing § 39-8-207(8)(b)(i), MCA, violates Article II, Section 16, by purporting to extend the exclusive remedy of the WCA to both the PEO and its client.
***302 JPT filed a cross-motion for summary judgment. The District Court granted summary judgment in JPT's favor. Ramsbacher has appealed the District Court's Order. Montana Trial Lawyers Association (MTLA), National Association of Professional Employer Organizations (NAPEO), and Avitus Group also filed briefs as amici curiae.
¶ 12 On March 28, 2018, we heard oral argument from the parties and amici regarding the constitutionality of § 39-8-207(8)(b)(i), MCA.
STANDARD OF REVIEW
¶ 13 The constitutionality of a statute is a question of law, and this Court's review of constitutional questions is plenary. Walters v. Flathead Prods., Inc. , 2011 MT 45, ¶ 9, 359 Mont. 346, 249 P.3d 913 (citation omitted). The constitutionality of a statute is presumed unless it is unconstitutional beyond a reasonable doubt. Powell v. State Comp. Ins. Fund , 2000 MT 321, ¶ 13, 302 Mont. 518, 15 P.3d 877 (citations omitted). The party challenging the constitutionality of a statute bears the burden of proving the statute unconstitutional beyond a reasonable doubt. If any doubt exists, it must be resolved in favor of the statute.
*317 Goble v. Mont. State Fund , 2014 MT 99, ¶ 15, 374 Mont. 453, 325 P.3d 1211 (citations omitted).
¶ 14 The rights found in Article II, the Montana Constitution's Declaration of Rights, are "fundamental," meaning these rights are significant components of liberty, any infringement of which will trigger the highest level of scrutiny, and thus the highest level of protection by the courts. Walker v. State , 2003 MT 134, ¶ 74, 316 Mont. 103, 68 P.3d 872 (citations omitted). See also Walters , ¶ 46 (Nelson, J., dissenting). To withstand a strict-scrutiny analysis, the legislation must be justified by a compelling state interest and must be narrowly tailored to effectuate only that compelling interest. Gryczan v. State , 283 Mont. 433, 449, 942 P.2d 112, 122 (1997) (citation omitted).
DISCUSSION
¶ 15 Does § 39-8-207(8)(b)(i), MCA, which extends the exclusive remedy of the Workers' Compensation Act from a Professional Employer Organization to its client, violate Article II, Section 16, of the Montana Constitution by depriving an injured worker of full legal redress?
¶ 16 Article II, Section 16, of the Montana Constitution is self-executing and thus the Legislature cannot pass legislation that limits this fundamental right. Trankel v. Dep't of Military Affairs , 282 Mont. 348, 362, 938 P.2d 614, 623 (1997) (citation omitted). Ramsbacher maintains the PEO Act limits this right by depriving injured workers of a fundamental right to a cause of action. He alleges ***303 § 39-8-207(8)(b)(i), MCA, deprives him of his constitutional right to seek redress for his injuries from JPT as a third party by impermissibly extending PPC's exclusive remedy to JPT.
¶ 17 When a PEO uses a professional employer arrangement with a client, § 39-8-207(3)(a), MCA, deems both the PEO and the client as immediate employers for the purposes of Montana's workers' compensation laws. Section 39-8-207(8)(b)(i), MCA, states, "The professional employer organization or group is entitled, along with the client, to the exclusivity of the remedy under both the workers' compensation and employers' liability provisions of a workers' compensation policy or plan of either party ...." Thus, pursuant to the language of the statute, if we determine § 39-8-207(8)(b)(i), MCA, is constitutional, the client businesses of PEOs, such as JPT, may be protected from third-party liability via the exclusive remedy provision of the WCA.
¶ 18 If the PEO Act constitutionally permits JPT to be considered Ramsbacher's "immediate employer who hired him," and if JPT also provided Ramsbacher with workers' compensation insurance coverage, the exclusive remedy found in Article II, Section 16, protects JPT from a third-party claim as mandated by § 39-8-207(8)(b)(i), MCA. This exclusive remedy arose in response to this Court's decision in Ashcraft v. Mont. Power Co. , 156 Mont. 368, 480 P.2d 812 (1971). In Ashcraft , the plaintiff worked for a construction company that Montana Power Company (MPC) hired. The contract between the construction company and MPC designated the construction company as an independent contractor, and the construction company agreed to carry workers' compensation insurance on its employees, including the plaintiff. The plaintiff suffered injuries when a power pole, owned and maintained by MPC, fell while he was working on it. The construction company's workers' compensation insurer paid the workers' compensation claim. The plaintiff then filed a negligence claim against MPC. This Court upheld the District Court's dismissal of the negligence claim, holding when an employee's immediate employer is an independent contractor who is required to carry workers' compensation insurance, the general employer is immune from a third-party claim. Ashcraft , 156 Mont. at 369-71, 480 P.2d at 812-13. The framers of the 1972 Constitution expressly overruled Ashcraft by granting immunity only to immediate employers who provide workers' compensation coverage. Webb v. Mont. Masonry Co. , 233 Mont. 198, 210, 761 P.2d 343, 351 (1988) (Weber, J., concurring).
¶ 19 Ramsbacher argues this case is analogous to Ashcraft , and § 39-8-207(8)(b)(i), MCA, cannot pass constitutional muster because, like ***304 Ashcraft , it allows someone other than the injured worker's immediate employer *318 to benefit from the exclusive remedy. Amicus NAPEO counters that this case is factually distinguishable from Ashcraft because, unlike Ashcraft , the facts here would not extend exclusivity to anyone who had neither a role in the employment relationship nor the responsibility to oversee the injured worker.
¶ 20 We agree the present facts are readily distinguishable from Ashcraft . There, this Court extended immunity to MPC, whose only relationship to the injured worker was that it contracted with the company who employed him to perform work for it. MPC was not Ashcraft's de facto employer. It played no role in his hiring, nor did it take on any of the duties of an employer-neither administratively nor day-to-day. Here, unlike MPC, JPT participated in Ramsbacher's hiring by first screening and approving him, and then sending him to PPC to complete the hiring process. After PPC assigned Ramsbacher to JPT, JPT took on employer-related duties, dictating Ramsbacher's day-to-day job activities. JPT's role in this case is readily distinguishable from MPC's role in Ashcraft . We therefore disagree with Ramsbacher that these cases are analogous.
¶ 21 While Article II, Section 16, immunizes employers from tort claims, it also precludes limitations on injured workers' claims against persons other than their employer or fellow employee. Trankel , 282 Mont. at 361, 938 P.2d at 622 (citations omitted). If an employer has met its obligation to obtain workers' compensation insurance, the exclusive remedy protects the employer from liability claims by employees and third parties. Asurion Servs., LLC v. Mont. Ins. Guar. Ass'n , 2017 MT 140, ¶ 13, 387 Mont. 483, 396 P.3d 140. The employer receives the benefit of the exclusive remedy and the injured worker receives the benefit of a no-fault recovery-thus satisfying the quid pro quo. Walters , ¶ 12. Because of the quid pro quo, damages for negligence are not available against an employer. Sitzman v. Shumaker , 221 Mont. 304, 307, 718 P.2d 657, 659 (1986).
¶ 22 Article II, Section 16, provides this exclusive remedy only to the immediate employer, and an employee may have a cause of action against a third party even if that third party pays the workers' compensation claim. Webb , 233 Mont. at 210, 761 P.2d at 350. In Webb , a subcontractor failed to carry workers' compensation insurance and, pursuant to § 39-71-405, MCA, the general contractor became liable for the worker's claim. Webb , 233 Mont. at 200, 761 P.2d at 344. We held that even though the general contractor ultimately paid the workers' compensation claim, it was not immune to a negligence action from the injured worker because it remained a third party and not the ***305 immediate employer. Webb , 233 Mont. at 201, 761 P.2d at 344. Thus, if JPT is anything other than Ramsbacher's immediate employer here, it is not protected from third-party liability by the exclusive remedy.
¶ 23 Ramsbacher argues PPC is his immediate employer. Ramsbacher points to § 39-8-207(1)(b)(i), MCA, which provides in part that the PEO reserves a right of direction and control over employees assigned to a client. Ramsbacher alleges Article II, Section 16, permits only one immediate employer, and PPC is his because it retained the right of control over his employment, pursuant to the PEO Act and the contract.
¶ 24 JPT argues PPC's statutory retention of the right of control does not obviate the fact that JPT actually controlled Ramsbacher's work on a daily basis, and § 39-8-207(1)(b)(i), MCA, and the contract further provide that JPT retained "sufficient direction and control over employees necessary to conduct business ...." JPT contends it split employer duties with PPC: PPC undertook administrative duties like payroll and insurance, while JPT controlled the day-to-day activities of the employees. Pointing to § 1-2-105(3), MCA, which states, "The singular includes the plural and the plural the singular," JPT argues "immediate employer" allows for the possibility of multiple employers. JPT argues neither Article II, Section 16, nor any other statute requires an employee to have only one "immediate employer," and the Legislature was free to define the term "immediate employer" in the PEO Act.
¶ 25 In further support of this proposition, JPT relies on Papp v. Rocky Mountain Oil & Minerals , 236 Mont. 330, 769 P.2d 1249 (1989), in which we held that two joint venturers *319 were both entitled to the exclusive remedy. We considered the effect right-of-control had in an employment relationship involving multiple putative employers and concluded joint venturers could delegate management duties to one venturer and still establish equal right-of-control among them. Papp , 236 Mont. at 343, 769 P.2d at 1257 (citation omitted). Papp demonstrates that an employee may have more than one immediate employer under Article II, Section 16, even if the employers have different duties.
¶ 26 Papp illustrates one such situation; the present case illustrates another. We see nothing in Article II, Section 16, that precludes determining a worker has more than one immediate employer. Here, PPC handles the administrative duties while JPT controls the day-to-day job duties of the employees assigned to it pursuant to their contract. Both PPC and JPT had the right to control Ramsbacher, both statutorily and contractually. JPT was Ramsbacher's employer-in-fact, ***306 controlling his day-to-day job duties. See Am. Agrijusters Co. v. Mont. Dep't of Labor & Indus., Bd. of Labor Appeals , 1999 MT 241, ¶ 22, 296 Mont. 176, 988 P.2d 782 ("[A]n individual is an employee of another when that other has the right to control the details, methods, or means of accomplishing the individual's work, and not just the end result of the work.") (citations omitted). JPT was also Ramsbacher's employer-in-law under the PEO Act. Although Ramsbacher urges that Article II, Section 16, requires us to choose only one entity as the immediate employer, our role is not to insert what has been omitted or omit what has been inserted. Section 1-4-101, MCA. Article II, Section 16, does not contain any language which forces us to limit our interpretation of "immediate employer" to only one employer-particularly in light of § 1-2-105(3), MCA.
¶ 27 The exclusive remedy guarantees workers with work-related injuries some form of compensation in exchange for relinquishing potential tort claims against their employers. Stratemeyer v. Lincoln Cnty. , 276 Mont. 67, 74, 915 P.2d 175, 179 (1996). In enacting the PEO Act, the Legislature created a statutory scheme which preserved the quid pro quo, maintaining the guarantee to the injured worker while allowing employers the opportunity to delegate their administrative duties to a PEO if they so choose. Amicus Avitus Group cites national research that demonstrates businesses using PEOs are less likely to go out of business, have lower employee turnover rates, and offer better benefit packages to employees.
¶ 28 Montana has a compelling interest in allowing its citizens the opportunity to pursue employment. Mont. Const. Art. II, § 3. The PEO Act sets forth a carefully prescribed, detailed statutory mechanism for a business structure which may benefit both employers and employees. The PEO Act applies only to two specified PEO-client arrangements-employee leasing arrangements, as defined in § 39-8-102(5), MCA, and professional employer arrangements, as defined in § 39-8-102(9), MCA -and § 39-8-207(8)(b)(i), MCA, extends the exclusive remedy to both PEO and client only in the latter arrangement. This statute is narrowly tailored to its purpose, maintaining the quid pro quo and ensuring both employers and employees retain the benefit of the exclusive remedy. Therefore, we cannot conclude § 39-8-207(8)(b)(i), MCA, violates Article II, Section 16, by impermissibly placing both the PEO and its client under the exclusive remedy.
¶ 29 However, Ramsbacher further argues that, even if we determine JPT is his immediate employer, JPT is not entitled to the exclusive remedy of Article II, Section 16, because it did not provide his workers'
***307 compensation coverage. Ramsbacher contends only PPC paid the premiums for his workers' compensation insurance, and Article II, Section 16, provides the exclusive remedy to an immediate employer only if "such immediate employer provides coverage under the Workmen's Compensation Laws of this state."
¶ 30 Although JPT did not directly pay Ramsbacher's workers' compensation premiums, it nonetheless contends it provided Ramsbacher with coverage via its contract with PPC and pursuant to the PEO Act. JPT contends Article II, Section 16, simply requires the employer to provide coverage, but does not specify how such coverage is to be provided. JPT argues that by entering into *320 an arrangement with a PEO, it "provided" Ramsbacher with workers' compensation insurance coverage.
¶ 31 JPT further points out that its contract with PPC required it to compensate PPC for obtaining and maintaining workers' compensation insurance coverage, and § 39-8-207(1)(c), MCA, requires the client of a PEO to share joint and several liability for workers' compensation insurance premiums if the PEO fails to pay them.
¶ 32 Section 39-8-207(1)(c), MCA, was invoked in a case before the Workers' Compensation Court. Where a PEO failed to maintain workers' compensation insurance coverage on employees it assigned to a client, that court ruled § 39-8-207(1)(c), MCA, rendered the client company liable for unpaid workers' compensation premiums the PEO should have paid. MP Livestock Trust/Perry Polzin Trucking v. Dep't of Labor and Indus., Uninsured Employers' Fund , 2005 MTWCC 6, ¶ 32. The court further ruled that in professional employer arrangements under the PEO Act-the arrangement which existed in that case and here-both the PEO and the client were employers for workers' compensation purposes. MP Livestock , ¶ 34.
¶ 33 In Papp , we held both employers were immediate employers who "provided" workers' compensation coverage: one employer was responsible for obtaining and maintaining workers' compensation insurance coverage for the employee while the other employer contributed to the premiums by reimbursing the payor in proportion to its stake in the joint venture. Papp , 236 Mont. at 343, 769 P.2d at 1257. Although Ramsbacher maintains JPT did not provide his workers' compensation coverage, the cost of his coverage was factored into the PEO agreement between PPC and JPT. The calculation of the premiums was in fact based on JPT as the employer. Thus, although PPC may have directly paid the insurer, JPT in turn paid PPC for obtaining and maintaining the workers' compensation insurance coverage. Thus, by contracting with PPC, JPT provided Ramsbacher ***308 with coverage.
¶ 34 Therefore, we conclude JPT is an immediate employer of Ramsbacher who hired him and provided him with workers' compensation coverage, and JPT is therefore entitled to protection from third-party liability via Article II, Section 16.
¶ 35 Finally, amicus MTLA cautions "creative business structuring" could threaten the exclusive remedy if businesses can create complex arrangements which deem numerous entities "immediate employers." Although this question may arise before this Court in the future, this is not that case. The U.S. District Court faced that question in Skramstad v. Plum Creek Merger Co. , 45 F.Supp.2d 1022 (1999). There, the court examined the relationship between various business entities engaged in a general partnership and determined only one entity was the immediate employer of the injured worker. The court held where the general partners were "separate entities for all purposes" and none but one played any role in the injured worker's employment, the exclusive remedy applied only to the entity which hired the injured worker. Skramstad , 45 F.Supp.2d at 1026-27.
¶ 36 Here, the relationship of PEO and client differs from the general partners in Skramstad . Both by statutory mandate and in fact, PPC and JPT played an active role in hiring Ramsbacher, fulfilling the duties of an employer, and providing Ramsbacher's workers' compensation coverage. When Ramsbacher suffered a work-related injury, the existence of two immediate employers instead of one did not affect the scope of relief available to him under Article II, Section 16, and the WCA. The PEO Act did not take away anything to which an injured worker would have been entitled prior to its passage. Since both PPC and JPT are immediate employers who hired Ramsbacher and provided workers' compensation coverage, they are both entitled to the exclusive remedy of Article II, Section 16.
CONCLUSION
¶ 37 We conclude § 39-8-207(8)(b)(i), MCA, does not violate Article II, Section 16, of the Montana Constitution by depriving an injured worker of full legal redress. Since JPT was an immediate employer who hired Ramsbacher and who provided him with workers'
*321 compensation insurance coverage, JPT is entitled to the benefit of the exclusive remedy as part of the quid pro quo.
¶ 38 Affirmed.
We concur:
MIKE McGRATH, C.J.
BETH BAKER, J.
JAMES JEREMIAH SHEA, J.
JIM RICE, J.
LAURIE McKINNON, J.
DIRK M. SANDEFUR, J.