No. 92-436

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

TIMOTHY L. GROVE and
BECKY BARRY,

     Plaintiffs and Appellants,

-v-

MONTANA ARMY NATIONAL GUARD,
RONALD A. OESTERLE, LEROY H.
HENDERSON and SCOTT J. SMITH,

     Defendants and Respondents.



FILED

APR 18 1994

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the First Judicial District,
                 In and for the County of Lewis & Clark,
                 The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

     For Appellants:

          Elizabeth A. Best, Best Law Offices, Great Falls,
          Montana

     For Respondents:

          Captain Thomas S. Muri, Staff Judge Advocate,
          Department of Military Affairs, Montana National
          Guard, Helena, Montana

Submitted on Briefs:  February 3, 1994

Decided:  April 18, 1994

Filed:

_____
          Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from a dismissal of this action by the First Judicial District Court, Lewis and Clark County, due to the court's determination that it did not have jurisdiction. The court determined that the plaintiffs were on federal active duty for the Montana Army National Guard (the Guard) and not subject to the court's jurisdiction. We reverse and remand.

We address the following issue as being dispositive of the case: Did the court err by dismissing the action due to lack of jurisdiction based upon the determination that plaintiffs were on federal active duty with the Guard?

Plaintiff Becky Barry (Barry) was hired by the Guard as a billeting clerk at the Fort Harrison training site in February of 1988, and subsequently moved into the position of administrative clerk on October 1, 1988. Ronald Oesterle (Oesterle) was the training site manager. Barry was supervised by defendants LeRoy Henderson, Scott Smith, and Oesterle.

Barry alleges that she was sexually harassed by defendants over an extended period of time. In the fall of 1989, Barry filed sexual harassment claims against Oesterle, Henderson and Smith with the Guard and also with the Equal Employment Opportunity Office (EEOC). Oesterle terminated Barry shortly after Barry filed her claims. Oesterle also terminated ten other persons, including Grove, at approximately or about the same time claiming a lack of funding. Several months later, eight of the eleven were rehired. Neither Barry nor Grove were hired back despite their seniority to

2

the other employees.

Timothy L. Grove (Grove), husband of Barry, filed a written statement supporting the sexual harassment claim. After Grove was not rehired by the Guard, he filed his own claim against the Guard. Barry and Grove alleged that they were not rehired in retaliation for Barry's claim. The Guard sent an investigator from the State Adjutant General's office to research the claims. The investigator found evidence of wrongful discharge in both Barry's and Grove's termination and failure to be rehired.

The Guard adopted the finding of its investigator and determined that Barry and Grove had been discriminated against and were due back pay. Barry filed a claim with the Human Rights Commission (HRC) in June of 1990. Initially, the HRC answered that it did not have jurisdiction because it considered the Guard to be a federal agency. Barry sought a reconsideration of this decision and the HRC subsequently issued a "Right to Sue Letter."

The Guard then changed its legal position stating that it could not issue back pay and that the Title VII action was not appropriate. The Guard determined that the only way Barry and Grove could receive back pay was to file an action for "Correction of Military Records." Subsequent to this decision, on March 25, 1992, Barry and Grove filed a Complaint and Demand for Jury Trial in the Montana First Judicial District Court, Lewis & Clark County. Defendants made a motion to dismiss for failure to exhaust administrative remedies.

On August 14, 1992, the court issued its Memorandum and Order

3

dismissing plaintiffs' complaint against all defendants because Barry and Grove were on federal active duty at the time of the discrimination and they could not pursue their claims in state court. It is from this order that plaintiffs appeal.

Did the court err by dismissing the action due to lack of jurisdiction based upon the determination that plaintiffs were on federal active duty with the Guard?

The District Court dismissed the action based upon its determination that it had no jurisdiction because the Guard is a federal agency. According to the court, plaintiffs must pursue the option provided them through the Guard's administrative agency.

On appeal, plaintiffs argue that the Guard is a state entity and has acted as such throughout the course of this litigation. While plaintiffs admit to the dual nature of the Guard, they argue that its dual role does not make the Guard a federal entity. Plaintiffs contend that while members of the Guard unit serve in the national armed forces and follow federal rules and regulations, they are also the state national guard and are subject to state rules and regulations. According to plaintiffs, at the times relating to the claims of harassment, they were employed in their state capacity.

The Guard argues that it has a dual character but that it follows federal laws and regulations and not those of the state. The Guard contends that federal law prohibits it from lawsuits such as this in state courts. According to the Guard, plaintiffs' only redress is to have their records corrected.

4

In reviewing a motion to dismiss, this Court will review the complaint in the light most favorable to plaintiffs and we will affirm the court's dismissal only if we determine that plaintiff is not entitled to relief under any set of facts which could be proven in support of the claim. King v. State (1993), 259 Mont. 393, 856 P.2d 954. The laws that are applicable to the alleged charges are those covered by both state and federal discrimination law. The Montana Human Rights Act and the Montana Constitution prohibit discrimination because of gender. Section 49-2-303, MCA; Art. II, Sec. 4, 1972 Mont.Const. Title VII of 1964 Civil Rights Act and the 1972 amendments to that Act prohibit the same type of discrimination to all employees including those of the federal government. 42 U.S.C. 2000e.

The record shows that members of the Guard are informed that both sets of laws apply to them. No issue regarding Title VII has been raised in the appeal to this Court. We limit our consideration to the District Court's decision that it did not have jurisdiction to apply state laws to the Guard and the plaintiffs.

This Court has determined that members of the Guard serve a dual responsibility, to the State of Montana and also the United States of America:

> In times of national emergency as declared by Congress, the militia may be called to active federal duty by the President pursuant to 10 U.S.C. § 3500. At such times the militia is subject to federal authority, and operates under rules virtually identical to the United States Army.
> During times of state emergency, the militia is subject to call for service by the Governor. Art. VI, § 13, 1972 Mont. Const. Then the militia operates under state authority, but only to the extent that the state

5

rules conform to applicable federal law. Section 10-1-105, MCA.

In times of peace, the militia operates somewhere between the two.

Evans v. Montana National Guard (1986), 223 Mont. 482, 483, 726 P.2d 1160, 1161.

The idea of a dual status has been established by the Supreme Court of the United States. In Perpich v. Department of Defense (1990), 496 U.S. 334, 110 S.Ct. 2418, 110 L.Ed.2d 312, the Supreme Court was faced with a question concerning whether Congress may authorize the President to order members of the National Guard to active duty for purposes of training outside the United States during peace time without either the consent of a state governor or the declaration of a national emergency. The Court stated:

> Since 1933 all persons who have enlisted in a state National Guard unit have simultaneously enlisted in the National Guard of the United States. In the latter capacity they became a part of the Enlisted Reserve Corps of the Army, but unless and until ordered to active duty in the Army, they retain their status as members of a separate state Guard unit.

Perpich, 110 S.Ct. at 2425.

Therefore, while the Guard units consist of members enlisted in the United States Army, they are also a Montana military unit consisting of Montana citizens:

> Our citizens may not be stripped of basic rights simply because they have doffed their civilian clothes.

Then Chief Justice Warren, The Bill of Rights and the Militia, 37 N.Y.U.L.Rev. 181, 188 (1962), as cited in E. Hawkens, The Justiciability of Claims Brought by National Guardsmen Under the Civil Rights Statutes for Injuries Suffered in the Course of

_Military Service_, 125 Mil.L.Rev. 99, 101 (1989). Our own state constitution makes clear which of the governmental entities controls:

> **Section 13. Militia.** (1) The governor is commander-in-chief of the militia forces of the state, except when they are in the actual service of the United States. . .

Art. VI, Sec. 13, 1972 Mont.Const.

While the District Court determined that Grove and Barry were on federal active duty and therefore, "in the actual service of the United States," the court cites no evidence from which it could have determined this fact. The record is devoid of any proof that the plaintiffs were on "federal" active duty as opposed to "state" duty.

What the file does contain is an affidavit by Grove stating unequivocally that at all times pertinent he was under orders from the Adjutant General of the State of Montana. In response, the Guard finds fault with Grove for not supplying a copy of his orders. However, the Guard does not supply a copy of the orders which they say derive from the federal government. The only evidence supplied by the Guard is a pay adjustment document signed by the State of Montana Comptroller. This document allegedly indicates that the source of monies paid to Grove was the United States Government. This is far from clear and is not sufficient to establish that Grove was on federal active duty. Nor does the Guard make clear how the funding of Guard units from federal funds negates the idea of a state militia under control of a state governor.

7

The record shows no indication that plaintiffs were called to federal active duty during the applicable time periods here. The District Court stated that Grove and Barry were on federal active duty pursuant to 32 U.S.C. § 502(f). However, that federal statute is merely descriptive of National Guard training. Subsection (f) states that regulations prescribed by the Secretary of the Army or Secretary of the Air Force will govern training. There is nothing in the record to indicate that at the times involved in this suit, Grove and Barry were "training." In fact, the federal statute that precedes the aforementioned statute states that: The training of the National Guard shall be conducted by the several States . . . 32 U.S.C. § 501(b). The federal statute does not establish that under the limited facts known to the District Court, Grove or Barry were under the control of the federal entity. If Barry and Grove were under federal orders pursuant to 32 U.S.C. § 502(f), the Guard should have submitted the same but failed to do so. In a similar manner, the Guard has not addressed 10 U.S.C. § 3495, which in substance provides that members of the Army National Guard are not in active federal services except when ordered thereto under the law. Again, if proof existed to show that Grove and Barry were on active federal duty, the Guard was obligated to submit proof of the same but failed to do so.

The Guard argues that Evans controls the present case. We disagree. While Evans is informative in its portrayal of the character of the Guard, the holding of the case dealt specifically with a tort claim. We there determined that Evans had no right to

8

sue another member of the Guard under the State Tort Claims Act because that statute makes such claims appropriate only for a "governmental entity" which the legislature has defined as a "state or political subdivision." Sections 2-9-101(3) and 2-9-102, MCA. We held that the Guard is not a political subdivision--clearly defined in our statutes as "any county, city, municipal corporation, school district, special improvement or taxing district, or any other political subdivision or public corporation." Section 2-9-101(5), MCA; Evans, 223 Mont. at 484, 726 P.2d at 1161.

We were careful in Evans not to rule on any Act other than the State Torts Claims Act. Therefore, it has no precedential value when considered in concert with the Montana Human Rights Act.

We conclude that dismissal of the plaintiffs' action was improper because the District Court had no evidence before it from which to determine that Grove and Barry were on federal active duty. We hold that the District Court erred in concluding that it did not have jurisdiction, and therefore erred in dismissing the action. We reverse the dismissal of the action and remand for further proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

9

_____

_____

_____
Justices

Justice William E. Hunt, Sr., specially concurring.

I concur in the results reached in the majority opinion, but do not agree with all that is said therein.

_____
Justice

10

April 18, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


Elizabeth A. Best
Best Law Offices
P. O. Box 2114
Great Falls, MT 59403


Captain Thomas A. Muri
Assistant Staff Judge Advocate
Department of Military Affairs
Montana National Guard
1001 North Main Street
Helena, MT 59620


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy