No. 96-026

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

JAMES B. TRANKEL,

    Plaintiff and Appellant,

v.

STATE OF MONTANA, DEPARTMENT OF
MILITARY AFFAIRS, MONTANA ARMY
NATIONAL GUARD,

    Defendants and Respondents.

FILED

APR 30 1997

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the First Judicial District,
                  In and for the County of Lewis and Clark,
                  The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Erik B. Thueson and James T. Towe (argued);
        Thueson & Lamb; Helena, Montana

    For Respondents:

        Hon. Joseph P. Mazurek; Attorney General; James M. Scheier and
        Thomas G. Bowe (argued); Assistant Attorneys General;
        Agency Legal Services; Helena, Montana

        William Gianoulias; Risk Management and Tort Division;
        State of Montana; Helena, Montana

        LTC Mike T. McCabe; Staff Judge Advocate;
        Helena, Montana (for Montana National Guard)

Submitted: October 22, 1996
Decided: April 30, 1997

Filed:

_____
/ Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

The plaintiff, James B. Trankel, commenced this action in the District Court for the First Judicial District in Lewis and Clark County to recover damages for personal injuries sustained while working on property owned and controlled by the defendant, State of Montana, through its Department of Military Affairs. The State moved to dismiss Trankel's complaint pursuant to Rule 12(b)(6), M.R.Civ.P. After considering the arguments of the parties, the District Court concluded that Trankel's claim was barred by the U.S. Supreme Court's decision in *Feres v. United States* (1950), 340 U.S. 135, and our prior decision in *Evans v. Montana National Guard* (1986), 223 Mont. 482, 726 P.2d 1160. The District Court granted the State's motion to dismiss. Trankel appeals from the District Court's order granting the State's motion. We reverse the judgment of the District Court.

Trankel raises the following issues on appeal:

1.     Can a person who is allegedly injured by the negligence of the State of Montana, acting through its Department of Military Affairs, while in the course of his employment with the United States Army, sue the State of Montana to recover damages for those injuries?

2.     Did the District Court err when it concluded that the plaintiff's allegations of statutory violations failed to state a claim?

## STANDARD OF REVIEW

The District Court dismissed Trankel's claim pursuant to Rule 12(b)(6), M.R.Civ.P., based on the court's conclusion that it failed to state a claim for which relief could be granted.

> A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Lockwood v. W.R. Grace & Co.* (1995), 272 Mont. 202, 207, 900 P.2d 314, 317.

> > A motion to dismiss under Rule 12(b)(6), M.R.Civ.P., has the effect of admitting all well-pleaded allegations in the complaint. In considering the motion, the complaint is construed in the light most favorable to the plaintiff, and all allegations of fact contained therein are taken as true.

> *Lockwood,* [272 Mont. at 207,] 900 P.2d at 317 (quoting *Boreen v. Christensen* (1994), 267 Mont. 405, 408, 884 P.2d 761, 762). The determination that a complaint fails to state a claim upon which relief can be granted is a conclusion of law. We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. *Lockwood,* [272 Mont. at 207,] 900 P.2d at 317.

*Common Cause of Montana v. Argenbright* (1996), 276 Mont. 382, 386, 917 P.2d 425, 427.

## FACTUAL BACKGROUND

The following facts were alleged in the plaintiff's complaint. For the reasons set forth above, we assume that they are true for the purpose of reviewing the plaintiff's appeal.

The Army National Guard of the State of Montana operates under the supervision and direction of the Department of Military Affairs for the State of Montana which is established pursuant to Titles 2 and 10 of the Montana Code Annotated.

James B. Trankel enlisted in the Montana Army National Guard on March 28, 1991. However, in 1992, after assuming full-time employment in the Guard, he was called to active duty in the United States Army pursuant to Title 10 of the United States Code.

In early 1992, the Guard began a program known as Southwest Asia Vehicle Rebuild Program (SWAREB), the function of which was to repair and rebuild vehicles that had been damaged in the Gulf War and then distribute them for use to National Guard units, including Montana's unit. That program was based out of facilities at Fort Harrison in Montana. In October 1992, while still in full-time service to the United States Army, Trankel was assigned to that section of the SWAREB program responsible for body repair and undercoating of vehicles. He performed his duties in a building located at Fort Harrison and designated as the paint and body shop.

During the course of his duties, Trankel was required to work with and around toxic and hazardous materials and stand in a pit below the ground surface while spraying these materials on the undersides of vehicles. However, the facilities were not properly vented and he was not provided with adequate equipment, including respirators and proper clothing. Trankel became drenched with toxic chemicals and inhaled dangerous levels of toxic substances because the State failed to implement and enforce safe operating procedures.

As a result of his exposure to toxic materials, Trankel has been treated for bronchitis and sinusitis, and has suffered permanent physical injuries, including injury to his brain and internal organs. He contended that his injuries were a result of the State's negligent failure

4

to implement safe operating procedures for the SWAREB activities that were performed on its premises.

Trankel also contended, in Counts II, III, and IV of his complaint, that the State violated the Occupational Health Act of Montana found at §§ 50-70-101 to -118, MCA; the Montana Safety Act found at §§ 50-71-101 to -334, MCA; and the Employee and Community Hazardous Chemical Information Act found at §§ 50-78-101 to -402, MCA.

The State moved to dismiss Trankel's complaint pursuant to Rule 12(b)(6), M.R.Civ.P., based on its contention that his claim was barred as a matter of law by the U.S. Supreme Court's decision in *Feres v. United States* (1950), 340 U.S. 135, and our prior decision in *Evans v. Montana National Guard* (1986), 223 Mont. 482, 726 P.2d 1160. It was and is the State's position that the *Feres* doctrine bars claims which arise from activities "incident to military service" regardless of the substantive law upon which the claim is based, the status of the plaintiff at the time he is injured, or the status of the party against whom the claim is made. In addition, it is the defendant's contention that the acts upon which Counts II, III, and IV were based do not provide private causes of action, but can be enforced only by means of the administrative remedies provided for in those Acts.

The District Court agreed with the State. It held that because Trankel's injuries were incident to his service in the National Guard, it is immaterial whether he was serving in a state or federal status at the time of his injuries, and therefore, that his claims were barred by the prior decisions in *Feres* and *Evans*. It also concluded that the Acts relied on in Counts II, III, and IV do not create private causes of action for recovery of damages, but instead must

5

be enforced by the various agencies to whom responsibility is given within the Acts. Trankel's complaint was, therefore, dismissed with prejudice and judgment was entered for the State of Montana.

## ISSUE 1

Can a person who is allegedly injured by the negligence of the State of Montana, acting through its Department of Military Affairs, while in the course of his employment with the United States Army, sue the State of Montana to recover damages for those injuries?

Essential to an understanding of Trankel's employment status at the time of his injury is an understanding of the statutory framework pursuant to which members of the United States Army Reserve forces are required to serve.

The "Army National Guard" refers to the organized militia of the several states. 32 U.S.C. § 101(4) (1994). The "Army National Guard of the United States" is a reserve component of the United States Army. However, its members are required to be members of the "Army National Guard." 32 U.S.C. § 101(5) (1994).

The President of the United States may call into "Federal service" members of the Army National Guard of any state when he deems it necessary and it is appropriate, based on circumstances provided by law. 10 U.S.C. § 12406 (1994).

However, when a member of the "Army National Guard" is ordered to active federal duty, he or she is relieved from duty in the National Guard of his or her state, from the effective date of the order to active duty in the federal military. 32 U.S.C. § 325 (1994). Members of the "Army National Guard of the United States" who have been ordered to

6

active duty become reserves of the Army, 10 U.S.C. § 12403 (1994), and are, thereafter, subject to the laws and regulations governing the United States Army. 10 U.S.C. § 12405 (1994).

The practical effect of this statutory framework was explained by the U.S. Supreme Court in *Perpich v. Department of Defense* (1990), 496 U.S. 334. There, the Court stated that:

> Thus, under the "dual enlistment" provisions of the statute that have been in effect since 1933, a member of the Guard who is ordered to active duty in the federal service is thereby relieved of his or her status in the State Guard for the entire period of federal service.
>
> . . . .
>
> The unchallenged validity of the dual enlistment system means that members of the National Guard of Minnesota who are ordered into federal service with the National Guard of the United States lose their status as members of the state militia during their period of active duty. If that duty is a training mission, the training is performed by the Army in which the trainee is serving, not by the militia from which the member has been temporarily disassociated. "Each member of the Army National Guard of the United States or the Air National Guard of the United States who is ordered to active duty is relieved from duty in the National Guard of his State or Territory, or of Puerto Rico or the District Columbia, as the case may be, from the effective date of his order to active duty until he is relieved from that duty." 32 U.S.C. § 325(a).
>
> . . . .
>
> . . . [T]he state affiliation is suspended in favor of an entirely federal affiliation during the period of active duty.

*Perpich*, 496 U.S. at 346-49.

7

We acknowledged the decision in *Perpich* and the distinction between federal and state status of National Guard members in *Grove v. Montana Army National Guard* (1994), 264 Mont. 498, 501-02, 872 P.2d 791, 793, and *Evans v. Montana National Guard* (1986), 223 Mont. 482, 483-84, 726 P.2d 1160, 1161.

Therefore, based on the facts assumed to be true in this case, Trankel, at the times relevant to his claim, had no formal affiliation with the Army National Guard for the State of Montana. He was employed by and acting entirely within the scope of his duties for the United States Army. It is, therefore, in that status that we must review the authorities relied upon by the parties and the District Court.

The State contends that members of the federal military cannot bring suit against other soldiers or military organizations for service-related injuries, based on *Feres*, 340 U.S. 135. It contends that this rule applies regardless of the identity of the tort-feasor, pursuant to *United States v. Johnson* (1987), 481 U.S. 681; that it applies even though the claim may be based on state law, pursuant to *Stauber v. Cline* (9th Cir. 1988), 837 F.2d 395, *cert. denied* (1988), 488 U.S. 817; and that we have held that the *Feres* doctrine bars claims against the National Guard for injuries incident to military service in *Evans*, 223 Mont. 482, 726 P.2d 1160. The District Court agreed.

Trankel, on the other hand, contends that *Feres* and *Johnson* are not applicable to this case because they are based on claims made pursuant to the Federal Tort Claims Act at 28 U.S.C. §§ 1346(b), 2671 - 80 (1994); *Stauber* is not applicable because it was not based on and did not include an analysis of Montana law; and *Evans* was wrongly decided and

8

should be reversed. Trankel further contends that sovereign immunity was abolished in Montana in 1972 pursuant to Article II, Section 16, of the Montana Constitution, and that the Legislature has not seen fit to extend immunity under these circumstances. Trankel further contends that § 10-1-104, MCA, which makes federal laws and regulations applicable to Guard members, provides an exception where those laws or regulations are inconsistent with Montana's Constitution.

For purposes of oral argument, and consideration on appeal by this Court, this case was combined with *Dorothy J. Lake, et al. v. State of Montana*, Supreme Court Cause No. 96-095, which involves the same issue and the same defendant acting in the same capacity. The plaintiff in that case also contends that to bar a claim against the State for injuries sustained during the course of employment by a person who was not, at the time of injury, employed by the State, would violate Article II, Section 16, of the Montana Constitution.

We first consider the applicability of the federal authorities relied on by the State. All other federal authorities are affirming of *Feres*. In *Feres*, the plaintiff's decedent was on active duty in the military service of the United States when he died from injuries caused by fire in his barracks. The plaintiff alleged, pursuant to the Federal Tort Claims Act found at 28 U.S.C. §§ 2671 to 2680, that the Army had negligently quartered Feres in barracks which it knew or should have known were unsafe. The U.S. Supreme Court framed the issue in *Feres* as follows: "The only issue of law raised is whether the Tort Claims Act extends its

9

remedy to one sustaining 'incident to the service' what under other circumstances would be an actionable wrong." *Feres*, 340 U.S. at 138.

The Court in *Feres* referred to its task as one of "statutory construction" and ultimately concluded that since the Federal Tort Claims Act extended liability to the United States in the same manner that a private individual would be liable, and since there was no historical basis for imposing liability on a private individual for injuries to a member of the military, there could be no liability pursuant to the Tort Claims Act for injuries incident to military service. *Feres*, 340 U.S. at 141-42. In arriving at its conclusion, that Court took into consideration enactments of Congress which provided no-fault systems of compensation for members of the military who are injured or killed during the course of their service. The Court concluded:

> If Congress had contemplated that this Tort Act would be held to apply in cases of this kind, it is difficult to see why it should have omitted any provision to adjust these two types of remedy to each other. The absence of any such adjustment is persuasive that there was no awareness that the Act might be interpreted to permit recovery for injuries incident to military service.

*Feres*, 340 U.S. at 144.

We find the *Feres* decision inapplicable to the facts of this case for several reasons: (1) Trankel is not suing the United States for his injuries; (2) Trankel's claim is not brought pursuant to the Federal Tort Claims Act; (3) the type of action brought by Trankel against the National Guard is the kind traditionally recognized by the common law in the State of Montana; and (4) although this case does not involve state workers' compensation benefits, the Montana Legislature has specifically recognized that third-party claims may be made by

10

those who receive statutory benefits for injuries sustained during the course of their employment, and has enacted laws to adjust the two types of remedy to each other. *See* §§ 39-71-412 and -414, MCA.

The State contends that the *Feres* doctrine applies to all claims made for injuries which are incidental to military service because the U.S. Supreme Court extended the doctrine to claims for subrogation by nonmilitary personnel in *Stencel Aero Engineering Corp. v. United States* (1977), 431 U.S. 666; to claims by military personnel who are off-duty at the time of their injury in *United States v. Shearer* (1985), 473 U.S. 52; and to claims by military servicemen against nonmilitary federal employees in *United States v. Johnson* (1987), 481 U.S. 681. However, regardless of the variation in the circumstances presented by each of the cited cases, each case was brought pursuant to the Federal Tort Claims Act and is part of the federal case law interpreting the scope of remedies provided for by that Act. None of the cited cases is relevant to this Court's interpretation of the remedies provided for by state statutory and case law, and guaranteed by our state Constitution.

Neither is the State's reliance on *Chappell v. Wallace* (1983), 462 U.S. 296, and *United States v. Stanley* (1987), 483 U.S. 669, persuasive. Although the *Feres* doctrine was applied by the Supreme Court in those cases to claims which were not based on the Federal Tort Claims Act, they did involve claims by members of the United States military who alleged that their superiors had violated their constitutional rights and 42 U.S.C. §§ 1985 and 1983, respectively. It is the function of the U.S. Supreme Court to define and limit the scope of rights afforded pursuant to those constitutional causes of action. However, those decisions

11

have little bearing on the scope of rights afforded under state law and guaranteed by our state Constitution.

The State also relies on the Ninth Circuit in *Stauber v. Cline* (9th Cir. 1988), 837 F.2d 395, *cert. denied* (1988), 488 U.S. 817. In that case, the plaintiff was employed by the federal government as a mechanic-technician, but like the plaintiff in this case, was also required to be a member of the National Guard as a condition of his employment pursuant to 32 U.S.C. §§ 709(b), 709(e)(1) and (2) (1994). The individual defendants were members of the Army National Guard of Alaska who were superior in rank to the plaintiff. The defendants were sued for intentional infliction of emotional distress and libel. *Stauber*, 837 F.2d at 396.

Stauber filed his action in state court, but it was removed to federal district court where it was tried before a jury which returned an award of damages in his favor. Following that verdict, pursuant to post-trial motions, the district court concluded that all of the parties were National Guardsmen under the direct command of the same U.S. Army lieutenant colonel; that plaintiff's work was incident to military service; and therefore, that his claim was barred by the *Feres* doctrine. *Stauber*, 837 F.2d at 397. The Ninth Circuit affirmed, relying primarily on those federal decisions previously discussed which were based on federal statutory or common law. There is no mention in the *Stauber* case whether state or federal substantive law applied, and if the former, what was the substantive law in Alaska upon which the claim was based. Neither is there any analysis in the *Stauber* case regarding the applicability of the aforementioned federal authorities to a situation in which a party's

12

claim is made against a non-federal party and based on state law. Therefore, we conclude that *Stauber* is not persuasive regarding Trankel's rights which are asserted pursuant to Montana law and the Montana Constitution.

Finally, the State contends, and the District Court agreed, that Trankel's claim is barred as a matter of law pursuant to our prior decision in *Evans v. Montana National Guard* (1986), 223 Mont. 482, 726 P.2d 1160. In *Evans*, the plaintiff was a member of the Montana Army National Guard who was injured while in State service while attempting to move a Coke machine from one part of a building to another. He sued the Guard for negligence, and his claim was dismissed by summary judgment. *Evans*, 223 Mont. at 483, 726 P.2d at 1161. We affirmed the District Court. However, our decision was based on our conclusion that § 2-9-102, MCA, of the State Tort Claims Act, did not authorize suits against the National Guard. *Evans*, 223 Mont. at 484, 726 P.2d at 1161. We held that that section authorized suits against "governmental entities" which were defined at § 2-9-101(3), MCA, as "the state and political subdivisions as herein defined," and that the National Guard was not included in the definition of political subdivisions found at § 2-9-101(5), MCA. *Evans*, 223 Mont. at 484, 726 P.2d at 1161. We did not address why the National Guard or the Department of Military Affairs for the State of Montana, which was also named as a defendant, were not subject to liability pursuant to that part of § 2-9-101(3), MCA, which defines "governmental entity" to include "the state."

The state is defined at § 2-9-101(7), MCA, as follows: "'State' means the state of Montana or any office, department, agency, authority, . . . or other instrumentality thereof."

13

"Agency" is defined at § 2-15-102(2), MCA, to include any "department" or "instrumentality of the executive branch of state government," and § 2-15-104(1)(b), MCA, lists the Department of Military Affairs as one of the constitutionally established departments or entities of the executive branch of government. Therefore, it is beyond question that the National Guard and Department of Military Affairs are governmental entities within the meaning of § 2-9-101(3), MCA, and our conclusion to the contrary in *Evans* was erroneous. Therefore, to that extent, our decision in *Evans* is overruled.

The State also cites *Evans* for the proposition that "[t]raditionally, the federal government and state governments have not been held liable in tort for injuries that rise 'in the course of activity incident to service.'" *Evans*, 223 Mont. at 485, 726 P.2d at 1161. However, that language from *Evans* is not precedent for the facts which gave rise to this case for several reasons. First, it was *dicta* following the actual basis for our decision which was that the National Guard was not covered by our State Tort Claims Act. Second, it was applied to the facts of that case which involved a member of the National Guard on active state duty suing his employer, in effect, for injuries he sustained during the course of his employment. Third, the constitutional basis on which we decide this case was neither raised in that case nor would it be applicable to the facts of that case. For these reasons, we conclude that *Evans* does not resolve the issue raised by this appeal.

Trankel cites decisions from the State of Washington in *Emsley v. Army National Guard* (Wash. 1986), 722 P.2d 1299, and *Kirtley v. State* (Wash. Ct. App. 1987), 748 P.2d 1128, in support of his right to maintain his cause of action in this case. While those cases

14

do appear on point, it is not necessary that we rely on authority from another jurisdiction for our decision.

Trankel's claim is brought in state court pursuant to the State Tort Claims Act and names the State of Montana as a defendant. The question with which we are presented is whether based on state law we would apply the *Feres* doctrine to Trankel's claim simply because his injury was incident to military service, or whether we are precluded from doing so based on state law, and specifically, our state Constitution. We conclude that Article II, Section 16, of the Montana Constitution, precludes application of the *Feres* doctrine to the factors in this case. Article II, Section 16, provides as follows:

> Courts of justice shall be open to every person, and speedy remedy afforded for every injury of person, property, or character. <u>No person shall be deprived of this full legal redress for injury incurred in employment for which another person may be liable except as to fellow employees and his immediate employer who hired him if such immediate employer provides coverage under the Workmen's Compensation Laws of this state</u>. Right and justice shall be administered without sale, denial, or delay.

(Emphasis added.)

It is clear from the minutes of the Constitutional Convention that the second sentence of Section 16 was in response to our decision in *Ashcraft v. Montana Power Co.* (1971), 156 Mont. 368, 480 P.2d 812. In that case, the plaintiff was injured while working on behalf of his employer on property owned by the Montana Power Company. He sued the power company based on his allegation that its negligence caused his injury. *Ashcraft*, 156 Mont. at 369, 480 P.2d 812-13. On appeal, this Court held that pursuant to § 92-438, RCM (1947), the power company could not be sued because it had required the plaintiff's employer to

15

carry workers' compensation coverage. *Ashcraft*, 156 Mont. at 371, 480 P.2d at 813. The second sentence of Article II, Section 16, was a response to that decision based on the delegates' intent that employees not be barred from third-party suits for injuries sustained during the course of their employment. The following minutes from the Constitutional Convention illustrate that point.

In his report to the Convention as a whole, Delegate Murray, representing the Bill of Rights Committee which drafted Section 16, gave the following explanation for the second sentence of that section:

> Under Montana law, as announced in the recent decision of *Ashcraft versus Montana Power Company*, the employee has no redress against third parties for injuries caused by them if his immediate employer is covered under the Workmen's Compensation law. The committee feels that this violates the spirit of the guarantee of a speedy remedy for all injuries of person, property or character. It is this specific denial, and this one only, that the committee intends to alter with the following additional wording: "No person shall be deprived of his full legal redress for injury incurred in employment for which another person may be liable except as to fellow employees and his immediate employer who hired him if such immediate employer provides coverage under the Workmen's Compensation laws of this state." In other words, the committee wants to insure that the Workmen's Compensation laws of the state will be used for their original purpose--to provide compensation to injured workmen--rather than to deprive an injured worker of redress against negligent third parties, beyond his employer and fellow employees, because his immediate employer is covered by Workmen's Compensation. . . . To permit no remedy against third parties in cases where they employer is covered by Workmen's Compensation is to encourage persons with rundown premises to contract out work without improving the quality of the premises. The committee urges that this is an abuse of the Workmen's Compensation law and constitutes a misapplication of that law to protect persons who are negligent. The committee commends this provision to the Convention with the belief that it is an important, if technical, aspect of the administration of justice. Those are the remarks which are contained in the booklet. Let me amplify them by saying basically this: <u>we feel that the right to third-party action is a right which</u>

> we should establish in our Constitution. It is a right which working men and women who are unfortunate enough to be injured have had for nearly 80 years in this state. We feel that it was wrongly taken away from these people by the Supreme Court decision which was mentioned. We feel that we perhaps are legislating in asking that this be written into our Constitution, but we of the committee really believe that we are acting in a judicial manner in asking that it be written in the Constitution for we feel that this Convention, perhaps, is the court of last resort for injured working men and women in Montana with respect to the third-party lawsuit, and we recommend that the section be adopted.

*Montana Constitutional Convention*, Vol. V at 1754, March 8, 1972 (emphasis added).

The second sentence of Section 16 was extensively debated. Delegate Habedank moved that it be deleted. That motion was defeated by a vote of 76-14 (*Montana Constitutional Convention*, Vol. V at 1759, March 8, 1972), and Section 16 was ultimately approved by a vote of 76-21 (*Montana Constitutional Convention*, Vol. VII at 2644, March 18, 1972).

It is clear from these Convention Minutes that while the United States Supreme Court used statutory benefits as a basis for denying a service member's claims for damages based on negligence, our constitutional delegates felt that the opposite result was appropriate.

We have considered the impact of Article II, Section 16, on numerous occasions and, without exception, have held that it precludes limitations on claims by injured employees against persons other than the employee's employer or fellow employee. *See Francetich v. State Comp. Mut. Ins. Fund* (1992), 252 Mont 215, 827 P.2d 1279; *Meech v. Hillhaven West, Inc.* (1989), 238 Mont. 21, 776 P.2d 488; *Webb v. Montana Masonry Constr. Co.* (1988), 233

17

Mont. 198, 761 P.2d 343; and *Hayes v. Aetna Fire Underwriters* (1980), 187 Mont. 148, 609 P.2d 257.

In *Webb*, 233 Mont. at 204, 761 P.2d at 346, we stated that:

> The second sentence of Section 16 speaks loudly and clearly for itself. If there could be any question about what the members intended the sentence to mean, the question can be answered by reference to the transcript of the convention. Delegate Marshall Murray, a Kalispell attorney, moved, on behalf of a unanimous Bill of Rights Committee, for the adoption of Section 16, which amended the 1889 Constitution by adding the workmen's compensation provision of the second sentence.

We then referred to the same comments by Murray, which are previously cited in this opinion, *Webb*, 233 Mont. at 204-05, 761 P.2d at 346-47, and then concluded that:

> [T]he *Ashcraft* holding was expressly and specifically overruled by the people of the state with their approval of Article II, Section 16, of the 1972 Constitution, in which they directed that immunity would be restricted to an "immediate employer who hired" the workmen and who had provided coverage.

*Webb*, 233 Mont. at 207, 761 P.2d at 349.

In *Meech*, we noted that:

> The narrow purpose the delegates ascribed to the change in the remedy guarantee is further reflected in the Proposed 1972 Constitution for the State of Montana, Official Text with Explanation, circulated to the voters prior to the vote on adopting the 1972 Constitution. According to the explanation in the voters' information pamphlet, the amendment
>
> > "Adds to 1889 constitution by specifically granting to a person injured in employment the right to sue a third party causing the injury, except his employer or fellow employee when his employer provides coverage under workmens [sic] compensation laws."

*Meech*, 238 Mont. at 40, 776 P.2d at 500 (alteration in original).

18

Finally, in *Francetich* we held that limitations on an injured employee's right to be fully compensated for his injuries in a claim against a third party by allowing subrogation prior to full recovery was precluded by Article II, Section 16. *Francetich*, 252 Mont. at 224, 827 P.2d at 1285. In language relevant to the issue before us, we stated that:

> Section 39-71-414(6)(a), MCA, restricts an injured worker's right to obtain a full legal redress against third-party tortfeasors. The second sentence of Article II, Section 16, states this cannot be done. The record of the debate at the Convention is clear that this was the delegates' intent in amending the provision. The second sentence is mandatory, prohibitive, and self-executing and it prohibits depriving an employee of his full legal redress, recoverable under general tort law, against third parties. Finally, as noted above, we recognized and explained this very idea in *Meech*.

*Francetich*, 252 Mont at 224, 827 P.2d at 1285 (emphasis added).

We reaffirm that pursuant to the second sentence in Article II, Section 16, of the Montana Constitution, any statute or court decision which deprives an employee of his right to full legal redress, as defined by the general tort law of this state against third parties, is absolutely prohibited. That sentence is mandatory and self-executing, and leaves no room for erosion based on what federal courts or the courts of other states would do pursuant to federal laws or the laws of other states.

For these reasons, we conclude that because James B. Trankel was not employed by the Army National Guard of the State of Montana or the Department of Military Affairs for the State of Montana at the time complained of, his claim against the State of Montana, pursuant to the State Tort Claims Act found at §§ 2-9-101 to -805, MCA, is neither barred

by the *Feres* doctrine, nor our prior decision in *Evans*. The District Court erred when it concluded otherwise. That part of the District Court's judgment is reversed.

## ISSUE 2

Did the District Court err when it concluded that the plaintiff's allegations of statutory violations failed to state a claim?

The District Court held that Counts II, III, and IV of the plaintiff's complaint, based on the Occupational Health Act, §§ 50-70-101 to -118, MCA; the Montana Safety Act found at §§ 50-71-101 to -334, MCA; and the Employee and Community Hazardous Chemical Information Act found at §§ 50-78-101 to -402, MCA, respectively, do not provide separate statutory bases on which to recover damages for personal injury. The District Court held that these acts define various duties of employers which may be relevant in a negligence action, but that since Trankel's negligence action was barred pursuant to *Feres* and *Evans*, Counts II, III, and IV were also barred.

We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. *Common Cause of Montana v. Argenbright* (1996), 276 Mont. 382, 386, 917 P.2d 425, 427.

Trankel contends that we have previously held that the Safety Act provides an independent basis for a cause of action to recover damages in *Cain v. Stevenson* (1985), 218 Mont. 101, 706 P.2d 128, and *Shannon v. Howard S. Wright Construction Co.* (1979), 181 Mont. 269, 593 P.2d 438, and that there is no basis for holding otherwise regarding the other two acts which have the same purpose and provide similar protections.

20

The State contends that enforcement of the several acts in question is delegated to various state agencies and that when interpreting similar statutory provisions, the U.S. Supreme Court has held that federal statutes did not authorize private causes of action. *See Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n* (1981), 453 U.S. 1. The State concedes, however, that the statutes may establish a duty for the purpose of proving negligence per se.

In *Shannon*, the plaintiff was employed by a subcontractor who had subcontracted with the general contractor and defendant, Howard S. Wright Construction Co., to perform plumbing and mechanical work at the Big Sky Resort. *Shannon*, 181 Mont. at 271, 593 P.2d at 439. Plaintiff was injured when he fell from a ladder while trying to gain access to the second level of a condominium that was under construction. He sued both Wright Construction and Big Sky Resort. During the jury trial, the district court instructed the jury pursuant to § 50-71-201, MCA (the Montana Safety Act), that an employer, including the prime contractor, has a duty to provide employees with a safe place to work. *Shannon*, 181 Mont. at 281, 593 P.2d at 445. On appeal, the defendants contended that neither of them was an "employer," as defined by the Safety Act. We held that the "safe place to work" provision of the Safety Act did establish a duty from the prime contractor to employees of subcontractors. *Shannon*, 181 Mont. at 283, 593 P.2d at 445-46. However, we did not distinguish between the duty which forms the basis for a claim of negligence and a duty which gives rise to an independent statutory cause of action.

21

In *Cain*, the plaintiff subcontracted to do electrical work for the defendant during the construction of an apartment building. The defendant was the owner of the building and the general contractor. The plaintiff fell and injured himself while trying to exit the building without the benefit of steps or a ladder and sued the defendant based on allegations of negligence. *Cain*, 218 Mont. at 102-03, 706 P.2d at 129. From a jury verdict in favor of the plaintiff, the defendant appealed the district court's conclusion that the safe place to work statute imposed a duty running from the defendant to the plaintiff. The defendant argued that pursuant to the *Shannon* decision, the statutes only applied in situations where the claim is presented by an employee of a subcontractor and the general contractor had control over the workplace. He contended that it did not apply in this situation where the plaintiff was, himself, the subcontractor. *Cain*, 218 Mont. at 103, 706 P.2d at 130. We held that the duty established by § 50-71-201, MCA, did apply to the subcontractor in that case while working for the general contractor. *Cain*, 218 Mont. at 104-05, 706 P.2d at 131. However, once again, we did not discuss whether the duty created simply served as a basis for a claim of negligence, or gave rise to a separate statutory cause of action.

More recently, in *Stratemeyer v. Lincoln County* (1996), 276 Mont. 67, 79-80, 915 P.2d 175, 182, we held that the Montana Safety Act establishes a duty to provide a workplace which is safe from mental injury, as well as physical injury. It is not clear from the reported opinion whether Stratemeyer alleged failure to comply with § 50-71-201, MCA, as a basis for his negligence claim, or whether he alleged a separate statutory cause of action. However, we stated that:

22

Stratemeyer contends that his claim is based on Lincoln County's failure to train, supervise, treat and debrief him following the incident. According to Stratemeyer, the traumatic nature and consequences of responding to the suicide were foreseeable, and post-traumatic stress disorder is a common injury for law enforcement personnel, emergency medical technicians and disaster and emergency services personnel.

*Stratemeyer*, 276 Mont. at 79, 915 P.2d at 182. A reasonable inference from the facts which are reported in the *Stratemeyer* decision is that the duty alleged in that case formed the basis for Stratemeyer's claim of negligence.

We conclude that there is no prior authority for the position that statutory acts, such as those in question, create independent causes of action aside from their relationship to proof of negligence, and also conclude, based on our prior decision in *Pollard v. Todd* (1966), 148 Mont. 171, 418 P.2d 869, that statutory acts, like those included in Counts II, III, and IV of the plaintiff's complaint, establish duties, the violation of which is negligence per se.

In *Pollard*, the plaintiff fell from a make-shift scaffolding constructed to the specifications of his employer, the defendant. *Pollard*, 148 Mont. at 175, 418 P.2d at 871. The defendants were exempt from coverage of the Workers' Compensation Act, and the plaintiff did not make a claim pursuant to that Act. We held that because of the duties imposed by the "Scaffolding Act," which was then found at Title 69, Chapter 14, RCM (1947), but is now found at Title 50, Chapter 77, MCA, the Legislature intended an absolute statutory duty upon owners of real estate to protect workmen and others from extraordinary hazards associated with scaffolds, and therefore, that plaintiff was entitled to an instruction

23

that breach of the statutorily-created duty was negligence per se. *Pollard*, 148 Mont. at 180, 418 P.2d at 873. The acts, which plaintiff alleges in Counts, II, III, and IV of his complaint were violated by the State, provide similar duties which were enacted for similar purposes. We therefore conclude that the violation of those statutes is also negligence per se, and that in the appropriate situation the jury should be so instructed. However, we also conclude, as did the District Court, that the Acts in question do not give rise to causes of action independent from a claim of negligence.

For these reasons, we affirm the District Court's conclusion that the Occupational Health Act, the Montana Safety Act, and the Employee and Community Hazardous Chemical Information Act did not give rise to independent causes of action. However, we reverse the District Court's conclusion that claims of negligence, based on violations of these Acts, are barred by the *Feres* doctrine, or our decision in *Evans*, and we furthermore reverse the District Court's conclusion that the sole means of enforcement of the duties imposed by these Acts are the administrative remedies provided therein.

The judgment of the District Court is reversed and this case is remanded to the District Court for further proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

_____
District Court Judge James E. Purcell

25

April 30, 1997

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Erik B. Thueson
Thueson & Lamb
Box 535
Helena MT 59624-0535

William Gianoulias
Risk Mgmt. & Tort Div.
Box 200124
Helena MT 59620-0124

Hon. Joseph P. Mazurek, Attorney General
James M. Scheier & Thomas G. Bowe,
Assistant Attorneys General
215 N. Sanders
Helena MT 59620-1401

LTC Mike T. McCabe
Staff Judge Advocate
Box 202101
Helena MT 59620-2101

       (Attorney for N.G.)

                              ED SMITH
                              CLERK OF THE SUPREME COURT
                              STATE OF MONTANA

                              BY: _D. Gallagher_
                              Deputy