No. 99-107

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 296 [56 St.Rep. 1185]

297 Mont. 98

990 P.2d 776

SHERMAN HAWKINS,

Plaintiff and Appellant,

v.

MIKE MAHONEY, BOB MORANI,

WILLIAM BROWN, CANDYCE

NEUBAUER, CONNIE STEEN, and

STATE OF MONTANA,

Defendants and Respondents.

APPEAL FROM: District Court of the Third Judicial District,

In and for the County of Powell,

The Honorable James E. Purcell, Judge presiding

COUNSEL OF RECORD:

For Appellant:

Sherman Hawkins, Pro Se; Deer Lodge, Montana

For Respondents:

Diana Leibinger-Koch, Special Assistant Attorney General;

Department of Corrections; Helena, Montana

Submitted on Briefs: August 5, 1999

Decided: December 2, 1999

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

¶1 The Plaintiff, Sherman Hawkins, brought this action in the District Court for the Third Judicial District in Powell County to recover the value of his personal property from the Defendants. The District Court granted the Defendants' motion to dismiss Hawkins' complaint for failure to state a claim upon which relief could be granted, pursuant to Rule 12(b)(6), M.R.Civ.P. Hawkins appeals from the District Court's Order dismissing his complaint. We reverse and remand.

¶2 The sole issue on appeal is whether the District Court erred by dismissing Hawkins' complaint for failure to state a claim upon which relief could be granted.

## FACTUAL BACKGROUND

¶3 Hawkins is an inmate at Montana State Prison in Deer Lodge, Montana. On July~12, 1997, Hawkins escaped from the prison. Immediately following his escape, Montana State Prison

officials packed up Hawkins' personal property, sealed it with security tape, placed Hawkins name on each box and removed the boxes from his cell. Hawkins' personal property was placed in the Montana State Prison storage room on July 12, 1997.

¶4 On July 14, 1997, two days after Hawkins escaped, Hawkins was apprehended and returned to the prison. Upon his return, prison officials placed Hawkins in administrative segregation in the maximum security unit. On July 20, 1997, Hawkins was found guilty of escape following a Department of Corrections disciplinary hearing. He received the following sanctions: ten days in disciplinary segregation, loss of good-time, and a recommendation for reclassification to the maximum security unit. The disciplinary hearings officer did not order Hawkins' personal property destroyed. During the next 30 days Hawkins requested the return of his personal property several times.

¶5 In September 1997 prison officials escorted Hawkins to the storage room and allowed Hawkins to remove all of his legal papers and legal materials from the boxes of his personal property. Prison officials informed Hawkins that, by policy, when an inmate escapes, all of his property is considered abandoned and is subsequently destroyed. Prison officials then informed Hawkins that his remaining personal property would either be destroyed or sold. Hawkins' remaining property included: a television, stereo, word processor, eyeglasses and books. Hawkins estimated that the approximate value of his personal property was $2290. Sometime after September 1997, prison officials destroyed or sold Hawkins' remaining personal property.

¶6 Hawkins subsequently filed this action against five Montana State Prison officials and the

State of Montana and alleged that the individual Defendants destroyed his property without affording him due process of law, that he had formed a gratuitous bailment which the Defendants violated, and that the destruction of his property constituted the infliction of cruel and unusual punishment. Defendants filed a motion to dismiss Hawkins' complaint for failure to state a claim upon which relief could be granted pursuant to Rule 12(b)(6), M.R.Civ.P. On February 2, 1999, the District Court granted the Defendants' motion to dismiss. The District Court concluded that Hawkins had abandoned his property by his escape and that the abandonment constituted a complete defense to any action brought by Hawkins which depended on his ownership of the property.

## STANDARD OF REVIEW

¶7 The District Court dismissed Hawkins' claim pursuant to Rule 12(b)(6), M.R.Civ.P., based on its conclusion that the complaint failed to state a claim for which relief could be granted. A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. See Trankel v. State of Montana (1997), 282 Mont. 348, 350, 938 P.2d 614, 616 (citation omitted). In Lockwood v. W.R. Grace & Co. (1995), 272 Mont. 202, 207, 900 P.2d 314, 317 we stated:

A motion to dismiss under Rule 12(b)(6), M.R.Civ.P., has the effect of admitting all well-pleaded allegations in the complaint. In considering the motion, the complaint is construed in the light most favorable to the plaintiff, and all allegations of fact contained therein are taken as true. The determination that a complaint fails to state a claim upon which relief can be granted is a

conclusion of law. Trankel, 282 Mont. at 351, 938 P.2d at 616. We review a district court's

conclusions of law to determine whether the court's interpretation of the law is correct. Trankel,

282 Mont. at 351, 938 P.2d at 616.

## DISCUSSION

¶8 Did the District Court err by dismissing Hawkins' claim for failure to state a claim upon

which relief could be granted?

¶9 Hawkins contends that the District Court erred in finding that, when he escaped from the

Montana State Prison, he abandoned his personal property which he kept in his cell. Hawkins

asserts that because he was returned to the prison within two days, and the Defendants had his

personal property in the prison storage room, the Defendants should have returned the property to

him when he requested it.

¶10 The Defendants respond that Hawkins abandoned his property when he escaped from

prison and as a result of his abandonment, the Montana State Prison became the owner of the

property "to do with it as it pleased." Defendants contend that Hawkins' escape evidenced his

intent to terminate his ownership of the property, stating: "Hawkins, therefore, had a choice. He

could keep his rights to his property or he could escape. The choices are mutually exclusive; he

could not accomplish both."

¶11 The District Court found that the Montana Uniform Unclaimed Property Act, §§ 70-9-801,

et seq., MCA, does not apply to Hawkins' personal property, because the Act only applies to

intangible personal property and the contents of a safekeeping depository. Thus, the District

Court relied on a 1989 Missouri Court of Appeals decision, Herron v. Whiteside (1989), 782 S.W.2d 414, to conclude that Hawkins had abandoned his property. In Herron, the Missouri Court of Appeals held that a prisoner's escape from confinement constitutes, as a matter of law, abandonment of the personal property the prisoner left at the prison. Herron, 782 S.W.2d at 416. In that case, during Herron's one day escape, prison officials allowed prison employees to give away his property and allowed other inmates to take Herron's property from his cell. Herron, 782 S.W.2d at 415.

¶12 We agree with the District Court that Montana's Uniform Unclaimed Property Act does not apply to the property at issue in this case. However, we conclude that the case relied upon by the District Court, Herron v. Whiteside (1989), 782 S.W.2d 414, is factually distinguishable from this case. In Herron, the prison employees and inmates ransacked Herron's cell after he escaped and appropriated Herron's property for themselves. The state did not take Herron's personal property into protective custody after his escape. Whereas, in this case, after Hawkins escaped from the prison, the Defendants removed Hawkins' personal property from his cell, placed his possessions in boxes with Hawkins' name on them and then placed the boxes in the prison storage room. After Hawkins returned to the prison, he asked about his personal property and asked that it be returned to him.

¶13 With regard to a former owner's rights to abandoned property, it has been stated that:

Personal property, upon being abandoned, ceases to be the property of any person, unless and until it is reduced to possession with the intent to acquire title to, or ownership of, it. Such

property may, accordingly, be appropriated by anyone, if it has not been reclaimed by the former owner, and ownership of it vests by operation of law, in the person first lawfully appropriating it and reducing it to possession with the intention to become its owner, provided such taking is fair.

1 C.J.S. Abandonment § 12 (1985) (emphasis added). In Gregg v. Caldwell-Guadalupe Pick-up Stations (1926), 286 S.W. 1083, 1084, the Texas court stated: "[a]bandoned property is no man's property until reduced to possession with intent to acquire title." We find the phrase "intent to acquire title" in the context of abandonment to be similar to the phrase "intent to acquire title" in the context of adverse possession. We have stated that the question of adverse possession is one of intention. Magelssen v. Atwell (1969), 152 Mont. 409, 414, 451 P.2d 103, 105. The intention must be discovered from all the circumstances of the case. Magelssen, 152 Mont. at 414, 451 P.2d at 105.

¶14 The importance of and methods of proving intent were discussed in Conway v. Fabian (1939), 108 Mont. 287, 89 P.2d 1022. There we defined an abandonment as:

[T]he relinquishment of a right; the giving up of something to which one is entitled. In determining whether one has abandoned his property or rights the intention is the first and paramount object inquiry. This intention is ascertained not only from the statements which may have been made by the owner of the property, but also from the acts of the owner . . .

Conway, 108 Mont. at 306, 89 P.2d at 1029.

¶15 In this case there is no contention that Hawkins expressed an intention to abandon his property. The intent was presumed or inferred when he left the prison without taking the property

with him. A "presumption" is "[a]n inference affirmative or disaffirmative of the truth or falsehood of any proposition or fact drawn by a process of probable reasoning in the absence of actual certainty of its truth or falsehood, or until such certainty can be ascertained." Black's Law Dictionary 1349 (4th ed. 1968).

¶16 The intent to abandon property is a requisite element of abandonment. If there is no expressed intent, then the intent may be inferred by the acts of the owner. In Herron, the Missouri court held that a prisoner's escape convincingly infers the intent to abandon property. Herron, 782 S.W.2d at 417. That court essentially held that intent to abandon property is a conclusive presumption, or an irrebuttable presumption. However, we know of no persuasive reason why such a presumption should be conclusive prior to the time when possession of the property is acquired by someone else with the intent to acquire ownership.

¶17 It does not appear, based on the facts we assume to be true, that at any point after Hawkins' escape and before Hawkins' request for the return of his property, that the Montana State Prison reduced Hawkins' property to possession with the intent to acquire title to, or ownership of it.

¶18 We conclude that the presumption or inference of intent to abandon one's property, based solely upon the acts of the owner, is a rebuttable presumption. A "rebuttable presumption" is one "which may be rebutted by evidence." Black's Law Dictionary 1432 (4th ed. 1968). Therefore, upon Hawkins' return to the prison and request for his property prior to it being claimed by anyone else, he effectively rebutted the presumption that he ever intended to abandon his property. Accordingly, when Hawkins reclaimed his property by requesting it be returned to him,

Hawkins regained his status as the owner of his personal property against all others.

¶19 We conclude that when Hawkins escaped from prison, there was a rebuttable presumption that he intended to abandon the property that he left behind. However, the Montana State Prison evidenced no intent to acquire title to his property and instead, labeled it with his name and selectively returned some of it to him. When Hawkins was apprehended and returned to the prison, he rebutted the presumption regarding his intent by claiming his property prior to its acquisition by anyone else.

¶20 Contrary to the concerns expressed in the dissenting opinion, nothing in this opinion infers that when Hawkins escaped from prison he intended to return voluntarily or to reclaim any of his personal items. Based on the plain language of this opinion we infer just the opposite from Hawkins' actions. Nor do we presume, as suggested by the dissent, that Hawkins "did not intend to abandon the items of personal property when he escaped . . . ." The conclusion plainly set forth in the preceding paragraph establishes the exact opposite presumption.

¶21 We conclude that the District Court erred when it held that Hawkins had abandoned his personal property and had no right to request the return of his personal property. We further conclude that the District Court erred when it held that Hawkins' Complaint failed to state a claim upon which relief could be granted pursuant to Rule 12(b)(6), M.R.Civ.P.

¶22 The judgment of the District Court is reversed and this case is remanded to the District Court for further proceedings consistent with this opinion.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ WILLIAM E. HUNT, SR.

Chief Justice J. A. Turnage dissenting.

¶23 Black's Law Dictionary defines "abandonment" as "[t]he giving up of a thing absolutely, without reference to any particular person or purpose, as vacating property with the intention of not returning, so that it may be appropriated by the next comer or finder." Black's Law Dictionary 2 (6th ed. 1990). I have no doubt that when Sherman Hawkins escaped from Montana State Prison, he had no intention of returning. Hawkins would still be heading for points south if he had not been captured in Idaho.

¶24 As the Missouri Court of Appeals aptly stated in the case upon which the District Court relied, "The act of escape is unequivocally inconsistent with any intention to retain ownership of property left at the penitentiary." Herron v. Whiteside (Mo. 1989), 782 S.W.2d 414, 416. I conclude that in escaping from prison, Hawkins abandoned the property he left behind.

¶25 By abandoning his property at the prison, Hawkins relinquished all right, title, claim, and interest in that property. Upon Hawkins' escape, the Montana State Prison properly became the owner of the property he left behind, to do with it as it pleased.

¶26 Hawkins returned to prison only as a result of his involuntary capture in Idaho. For the majority to infer that Hawkins, a convict who intentionally escaped from the Montana State

Prison, intended to return to the prison voluntarily, and not as an escaped convict, to reclaim some items of personal property he apparently decided to leave behind so as not to impede his escape, is giving inference a bad name. It is no more logical to infer that Hawkins did not intend to abandon the items of personal property when he escaped than to infer that a burglar who lost his hat in the process of burglarizing a retail store would intend to return two days later and ask the store manager if he found his hat and if so to return it to him.

¶27 It is a shame to put the State to the expense of defending this case and to further burden overcrowded district court and Supreme Court dockets. I dissent and would affirm the District Court's dismissal of Hawkins's complaint for failure to state a claim.

/S/ J. A. TURNAGE

Justice Karla M. Gray, dissenting.

¶28 I join Chief Justice Turnage's dissenting opinion and write separately to voice additional concerns about the Court's analysis.

¶29 "Abandonment" is "[t]he relinquishing of a right or interest with the intention of never again claiming it." Black's Law Dictionary 1 (7th ed. 1999). Under this definition, it is clear that the determination of whether abandonment--that is, relinquishment and intent--has occurred is to be made at the time of the acts at issue.

¶30 Montana law on abandonment is in accord. Abandonment of property in the context of the Montana Residential Landlord and Tenant Act is "the absolute relinquishment of the premises consisting of the tenant's act or omission and intent to abandon." Johnson v. American Reliable

Ins. Co. (1992), 253 Mont. 253, 258, 833 P.2d 176, 180. See also Whalen v. Taylor (1996), 278 Mont. 293, 925 P.2d 462. In different contexts, our definition of abandonment remains the same, the relinquishment of a right with the intention of terminating ownership and not reclaiming future possession. See, e.g., Rumph v. Dale Edwards, Inc. (1979), 183 Mont. 359, 600 P.2d 163; McEwen v. Big Sky of Montana, Inc. (1976), 169 Mont. 141, 545 P.2d 665. Abandonment has occurred when actual acts of relinquishment are accompanied by the intention to abandon. Rumph, 183 Mont. at 373, 600 P.2d at 171. Thus, applying Montana law to the asserted abandonment by Hawkins of his property, Hawkins acted to relinquish his property when he escaped, and his intention to terminate ownership and not reclaim future possession--which clearly can be inferred from his acts of escape--accompanied that act at that time.

¶31 Rather than apply Montana law on abandonment, however, the Court has significantly changed that law by engrafting the notion of a "rebuttable presumption" of abandonment. The introduction of this presumption into the law extends the point in time at which the determination of abandonment is to be made past the confluence of the acts and intent at issue, and effectively turns the question into whether an abandonment can be "revoked" either by subsequent acts of the former owner or by the absence of acts by some other party to reduce the abandoned property to possession with the intent to acquire title. Whatever the wisdom of such changes to Montana jurisprudence in an appropriate case may be, it is my view that they should be left to a case which actually raises them; here, neither party did so in the District Court, the District Court did not do so in the order being challenged and the parties do not do so on appeal.

¶32 Finally, Herron did not--as the Court states it--"essentially [hold] that intent to abandon property is a conclusive presumption, or an irrebuttable presumption." Rather, the Missouri Court of Appeals applied Missouri law virtually identical to that of Montana--namely, that abandonment is complete upon the confluence of act and intent, with intent subject to being inferred--to the facts of the case before it and held that the inmate's escape from confinement constituted abandonment of the personal property left behind as a matter of law. Herron, 782 S.W.2d at 416. As the Herron court put it, "[t]he act of escape is unequivocally inconsistent with any intention to retain ownership of property left at the penitentiary." Herron, 782 S.W.2d at 417.

¶33 I would conclude, under Montana law, that Hawkins abandoned his property when he escaped. I would further conclude that the District Court properly relied on Herron, which largely reflects Montana law. For those reasons, I would affirm the District Court and I respectfully dissent from the Court's failure to do so.

/S/ KARLA M. GRAY